# CHARLESTON.

### NORFOLK & W. R. CO. *v.* NIGHBERT *et al.*

Submitted January 19, 1899—Decided April 1, 1899.

EMINENT DOMAIN—*Railroads—Damages*

A verdict finding an amount of compensation in a proceeding by a railroad company to condemn land that is so high that it must be attributed to prejudice, passion, bias, partiality, or mistake of law or judgment, will be set aside.     (p. 203).

Error to Circuit Court, Logan County.

Action by the Norfolk & Western Railroad Company against Stuart Wood and James A. Nighbert. From a judgment for defendants, plaintiff brings error.

*Reversed.*

JAS. I. DORAN and CAMPBELL, HOLT & CAMPBELL, for plaintiff in error.

JOHN B. WILKINSON and JOHN S. MARCUM, for defendants in error.

BRANNON, JUDGE:

The Norfolk & Western Railroad Company, by its writ of error, complains of the judgment of the circuit court of Logan County in refusing to set aside a verdict assessing compensation to Stuart Wood and James A. Nighbert for land of theirs which said company proposed to take, for its use, through a condemnation proceeding instituted by it in that court. The complaint of the company is that the amount of three thousand four hundred and ninety-five dollars compensation fixed by the jury is grossly hard and excessive. The finding of a jury is seldom disturbed on account of amount, especially where the law sets up no measure or standard of value. But the finding of a jury is in no case, under the law of this State, beyond the health-

ful and salutary control of the courts. Strong as is the function of a jury as to damages, whether in cases purely sounding in damages for tort, or where the law fixes a standard, its power is not arbitrary and unlimited, and cannot be allowed to work injustice and oppression. Our Code, in chapter 131, section 15, enforces this principle, by broadly enacting that "a new trial may be granted, as well where the damages are too small as where they are excessive." 'The general law is such. This Court said in *Vinal* v. *Core*, 18 W. Va. 1, that "where the proper amount of damages cannot be fixed by the court by the application of settled rules of law to the evidence, but where it necessarily depends in a great degree on the discretion of the jury, if the damages are so enormous as to justify the court in setting aside the verdict, this should be done." That was in an action for malicious prosecution, where the law gave no standard of damages. And this Court said in *Unfried* v. *Railroad Co.*, 34 W. Va. 260, (12 S. E. 512), "that in an action for damages, where the verdict is so enormous [erroneous] as to clearly indicate prejudice, partiality, passion, or corruption in arriving at their conclusions, the defendant is entitled to a new trial." That was an action for personal injury, where the law set up no measure of damages. The authorities will show generally that if the verdict is so disproportionate to the injury as to suggest the inference that it is not the result of fair, calm, unbiased judgment of the jury, the verdict ought to be set aside as excessive. *Ogg* v. *Murdoch*, 25 W. Va. 139. That is the law in any character of case. This is more particularly the case, and the court sees its way more clearly to set aside a verdict, where the case is governed by a legal rule fixing a standard of damages. There, if the jury has departed from that standard or measure, by finding either less or more than the plaintiff is entitled to by a preponderance of the evidence or the circumstances of the case, the court will grant a new trial. Suth. Dam. § 459; 3 Sedg. Meas. Dam. § 1320. This is a proceeding for condemnation of land for public use, and the law fixes a standard or measure of damages by the provision in Code, c. 42, s. 14, that the commissioners "shall ascertain what will be a just compensation to the

person entitled thereto for so much thereof as is proposed to be taken, and for damage to the residue of the tract, beyond the peculiar benefits to be derived in respect to such residue, from the work to be constructed, or the purpose to which the land is to be appropriated." Therefore the measure is "just compensation," and, whenever the assessment is greater or less than that, the law is violated.

The amount found in this case is excessive. The tract is one of two thousand acres of wild mountain land in Logan County, distant from town or market, with no improvement save about thirty-five acres of bottom, and that worn and poor from cultivation for fifty or sixty years, lying practically out to the common, save a small garden spot, with a log house upon it, forty by twenty feet, weather-boarded, ceiled with plank, with one chimney, two stories, four rooms, old, worn, and dilapidated. The railroad takes a strip sixty feet wide and one and one-half miles long, containing ten and six-tenths acres, half of it rough bluff land, not capable of cultivation or apparent use, leaving five acres of bottom land taken by the railroad. The strip had no timber or mineral upon it. The assessment taken by the acre averages about three hundred and fifteen dollars. The railroad takes the porch of the worn, decayed house. But say it takes the house. The proof shows that a better house could be built for six hundred dollars, and that the present one could be handily moved back from the railroad to a good site for one hundred and twenty-five dollars. The owner of the land did not reside in this house. Worn with long service, can we fairly say it is worth one thousand dollars? Is not that estimate put upon it by some witnesses grossly beyond its real present value? How as to the residue of the tract? Wild, rough, poor, not desirable, perhaps incapable of being used for cultivation. How is it injured? Does not our knowledge of our State tell us, without proof, that, if timber or coal land, situated as it is in that remote, inaccessible section, the railroad, which is already built and operating, is a blessing, vastly increasing the value of the land? The only damage to the residue that is suggested is that a small stream comes into Pigeon creek, and, the railroad having a culvert over that stream only fifteen feet wide, it

prevents logs coming down and getting out to Pigeon creek, which is right at hand at the culvert. Evidence, however, shows that there is no banking ground there on Pigeon creek for such timber. Before the railroad came, the timber coming down that stream did not go out of Pigeon creek, but was stopped before it got to where the railroad is, and was hauled by the county road to a point, up or down Pigeon creek, where suitable banking ground could be had. But the fact is that, if this land teemed with timber, the evidence does not show it, except by inference from witnesses talking about timber coming down that stream. We do not know that there ever was any merchantable timber on it. Is there any left there? What is its kind or value, as a basis for any estimate of damage on its account? The evidence does not say. In 1887 this whole tract was purchased by Nighbert at a public court sale at two thousand dollars. He had debts on it, and wants to say that they should be taken into consideration in counting its cost to him; but it is probable that he would not have given what he did for it, but for that indebtedness. He says it cost him three thousand dollars to remove a dower right from it. How could a dower right in that land approximate that sum? He thinks the property cost him eleven thousand dollars; but he counts purchase money, all his debts against the land, the dower charge, and some indefinite sum paid for taxes and cost of partition. What if it did cost him eleven thousand dollars? Is he to put in his insolvent debts in an estimate or valuation against the company? Ought the company to pay one-third of the whole cost of the tract, even if its actual cost were eleven thousand dollars, when the company gets but a morsel of this wild, remote tract? Add to the cost at the court sale the utterly excessive valuation for dower, making five thousand dollars, and this verdict makes the company pay nearly four-fifths of it. Some witnesses fix the value of the bottom land taken at from two hundred dollars to three hundred dollars per acre. There must be some fabulous virtue in that land, but, if so, the evidence does not pretend to specify it. Where in the State is so favored a locality, judged by this evidence? This whole State has no lands which, in the market, will bring anything like

that price, unless it be a few choice acres at the edge of our best cities. It is beyond question that the bottom land that is left is damaged. So is the house. We may say it is taken, though it surely could be moved away from its present site, if worth preserving, for a reasonable sum. But as to the residue no damage is made apparent,—surely not to make up this large verdict. Compensation should be given for the land actually taken. That must be paid for. Compensation, fair and just, should be accorded for damages to the residue, if there is any real damage, but it should not be unjust and oppressive to the other side. The owners allowed the company to build its road near that house without agreeing on compensation, and thus it did not wrongfully invade the curtilage of the house, as the owners consented. No doubt, they considered the railroad a great benefit. I do not see that the balance of the tract—the wild mountain rising right from the railroad —is damaged. If so, it is not shown,—that is, except as mere opinion, not based on facts given, as it is not shown that there is any timber of merchantable value on it, so as to be a basis of estimate; and if there is, as the public road is there, over which, before the railroad, it was usually hauled, and as the railroad affords a means of shipment, it cannot be a substantial damage to the land, even as regards timber, except in imagination. As the single question before us is whether the verdict is excessive, I am compelled to speak thus plainly in order to express reasons for the conclusion that it is excessive. Reversed and new trial.

*Reversed.*