UNITED FUEL GAS COMPANY

*v.*

ROY A. ALLEN, *et al.*

(No. 10497)

Submitted January 20, 1953. Decided March 17, 1953.

898

B. J. *Pettigrew*, C. E. *Goodwin* and T. E. *Pettigrew*, for plaintiff in error.

V. K. *Knapp*, John G. *Anderson*, for defendants in error.

RILEY, JUDGE:

This is a proceeding in eminent domain, instituted in the Circuit Court of Putnam County by United Fuel Gas Company, a corporation, against Roy A. Allen and Clara Allen, for the purpose of obtaining an underground gas storage pool for public use, under and pursuant to Code, 54-2-15, as amended. The gas company prosecutes this writ of error to a judgment based upon a jury verdict in favor of the Allens in the amount of $6,000.00.

The property sought to be taken is that part of the subterranean natural gas stratum in the Big Lime formation, underlying the Allens' 175 acres of land situate on the waters of Buff Branch of Big Hurricane Creek, Curry District, Putnam County, located within the perimeter of petitioner's gas storage pool, containing approximately twenty-nine hundred acres, referred to in this record as "Pool X-4".

The commissioners, appointed by the court to ascertain the value of the property sought to be taken, found $7,875.00 to be a just compensation therefor. The petitioner, United Fuel Gas Company, excepted to the report and demanded a jury trial. The case was tried in the circuit court upon the exceptions of the petitioner to the commissioners' report. No pleadings were filed by the defendants in the circuit court.

The petitioner, United Fuel Gas Company, is a gas public utility company, having the right under Code,

54-2-15, to condemn property for public use. It has established in this record that it has no intention to and will not drill any well on the Allen 175-acre tract of land, and will not interfere with, enter upon, or in any manner use the surface of the land, except the Big Lime formation, which will be used by petitioner only by the migration of gas injected into the formation through wells on adjoining or adjacent properties.

The defendant, Roy A. Allen, is the owner in fee of the tract of 175 acres, described in the petition, lying one and a half miles from any hard surfaced road, subject to the inchoate right of dower of the defendant, Clara Allen.

R. H. Adkins and others, doing business as Buff Creek Gas Company, independent oil and gas operators, are lessees under an oil and gas lease on the 175 acres, and are producing gas from the Berea sand thereunder. Adkins and his associates operate the Berea sand by a single well, which the record discloses will produce gas in marketable quantities for fifteen or twenty years. Only the Berea well was drilled through the Big Lime formation, and only a slight showing of gas in that formation was found. The operation of this Berea well will not be affected by the proposed storage operations of the petitioner in the Big Lime formation.

The petitioner has acquired from Adkins and his associates the Big Lime leasehold operating rights. The Big Lime formation lies approximately sixteen hundred feet below the surface of the Allen land, and is some distance above the Berea sand. There is evidence in this record that the Big Lime formation, involved in this proceeding, is not commonly bought and sold, and has common characteristics with other subterranean formations used in other localities for gas storage purposes.

This 175-acre tract, including the improvements situated thereon, for the last five years has been assessed for taxation in Curry District, Putnam County, at $12.00 an acre, or a total of $2,380.00. The latter evidence was admitted into the record without objection. In this regard

see *Riddle* v. *The Baltimore and Ohio Railroad Co.*, handed down by this Court on December 22, 1952, 137 W. Va. 733, 73 S. E. 2d 793.

The final order of the Circuit Court of Putnam County, entered on March 29, 1952, provided, among other things: (1) That the entire subterranean natural gas stratum, known as the Big Lime stratum, in and under the Allen tract of 175 acres, "shall be and is vested in the petitioner, United Fuel Gas Company"; (2) that pursuant to a voluntary offer made by United Fuel Gas Company during the course of the trial, when the Big Lime formation underlying the Allen tract shall no longer be used for storage purposes, the gas company will transfer title to the formation to the then owner or owners of the residue of the property; and (3) the United Fuel Gas Company is given leave to withdraw from the papers in this proceeding the plat and description of the land, together with the copy of the order for the purpose of having the same recorded in the office of the Clerk of the County Court of Putnam County.

Before proceeding to take evidence in the circuit court, the parties stipulated that United Fuel Gas Company is a gas public utility company, having the right, under the laws of the State of West Virginia, to condemn the "underground storage stratum for use as a gas storage reservoir"; and that in taking the Big Lime stratum, underlying the Allen tract of 175 acres, the gas company will not interfere with, enter upon, or otherwise use the surface of the land in and about its storage operation or any other portion of that land, other than the Big Lime formation.

Immediately following this stipulation, E. C. Stump, superintendent of gas procurement for United Fuel Gas Company, called as a witness for petitioner, testified concerning (1) the entire acreage of the pool in that area; and (2) the property sought to be acquired and the use thereof. The right of the utility company to condemn the property sought to be acquired having thus been established by stipulation, and the extent of the property

having been described in the petition, as well as in the testimony of petitioner's witness Stump, the defendants proceeded to carry the burden of proving the value of the property, together with the damages to the residue. This defendants were required to do under the holding of this Court in *Strouds Creek & Muddlety Railroad Co.* v. *Herold*, 131 W. Va. 45, 45 S. E. 2d 513. See generally 18 Am. Jur., Eminent Domain, 342, and 6 M. J., Eminent Domain, Section 87.

The question whether the defendants have introduced sufficient evidence of just compensation for the property taken and damages to the residue thereof falls into two distinct categories: (1) The market value of the property sought to be taken; and (2) the damages to the residue thereof. In that order the overall question will be considered.

The defendants introduced no evidence bearing on the value of the Big Lime stratum sought to be acquired. The defendant, Roy A. Allen, recalled, on direct examination, and in answer to the inquiry, "Bearing * * * in mind that they are taking the big lime strata, what is, in your opinion, the market value of that big lime strata? You as a property owner?", answered, "Well, I can't do that." Counsel for the defendants in his closing argument to the jury admitted that no evidence had been introduced on behalf of the defendants bearing directly on the market value of the property taken.

The witnesses called by petitioner testified in detail, and in support of the petitioner's theory of the case concerning the market value of the Big Lime stratum sought to be acquired.

Petitioner's witness Stump testified that he had experience in the acquisition by petitioner of all of the fourteen storage pools in West Virginia, the same having been acquired under his direct supervision; that of the twenty-nine hundred acres embraced in "Pool X-4", 2,364 acres were acquired by voluntary negotiations and agreements; and in answer to the question, "On what basis

did you make outright purchases as distinguished from leases of the big lime gas storage stratum in those counties to which you have referred, or their similar strata?", the witness was permitted to answer, over objection, "$13.60 per acre."

Petitioner's witness H. H. Cutler, Superintendent of the Lease and Right of Way Department of Hope Natural Gas Company, testified that Hope Natural Gas Company has been storing gas since July 1, 1937. At the time he testified that company had under storage 24,244 acres of land in Harrison, Taylor, Lewis, and Gilmer Counties. In answer to the inquiry: "Mr. Cutler, from your years of experience in purchasing gas rights outright, do you have any opinion as to what the fair market value of the big lime stratum would be, suitable for storage purposes, situate in Curry District of Putnam County, West Virginia, bearing in mind that the fair market value is that value at which a willing seller would sell, acting under no compulsion, and a willing purchaser would pay for the stratum, acting under no compulsion," testified, "It would have some nominal value."

H. Isaiah Smith, petitioner's witness, a former resident of Putnam County, testified that he was familiar with ten or twelve transactions concerning the sale and purchase of the Big Lime, the Berea, and the Oriskany strata for gas storage purposes in Kanawha County, which county borders on Putnam County. This witness testified that the fair market value of the Big Lime stratum underlying the Allen land is $13.60 an acre.

Petitioner's witness, Veleair C. Smith, a geologist, the owner of a public utility gas company in Putnam County, president of Wells Service Company, specializing in subsurface engineering, and a number of gas companies, some of which operate in Putnam County, testified that if a stratum has no reserves, "It has a negligible value."

Petitioner's witness, R. H. Adkins, a resident of Hamlin, Lincoln County, a drilling contractor and purchaser of natural gas, testified that he had been engaged in that

work in Putnam, Wayne, Cabell, Boone and Lincoln Counties, all located in the southern part of the State of West Virginia, having drilled about two hundred fifty wells for himself and his associates, and about two hundred fifty to three hundred wells for other people, in all from five to six hundred wells. This witness further testified that he was familiar in a general way with the location of the Roy A. Allen one hundred seventy-five acre tract in Putnam County, and that he drilled a well on that tract through the Big Lime formation to the Berea Sand. Testifying as to the value of the property, this witness said: "* * * in so far as we are concerned, of our lease, at a dollar an acre on that, which is $175."

The defendants adduced the testimony of only two witnesses bearing on the damages to the residue: C. W. Stuart, who testified that the value of the entire farm before the taking of the Big Lime formation was eighteen thousand dollars, and that the value after the taking and the activation of the storage pool would be nine thousand dollars. Roy Arbaugh testified that it would cost four thousand dollars to drill through the formation after it has been activated by petitioner for gas storage purposes.

As Stuart's testimony was admitted by the trial court over objection, we shall at this point discuss his qualifications.

Stuart's qualifications are: (1) He has resided in the vicinity of the property involved since 1938; (2) he has bought and sold real estate in that vicinity; (3) he has participated in the promotion and development of the Lake Washington project (a promotion enterprise for the sale of parcels of land for residence purposes on United States Route No. 60 in Putnam County), near the line between Putnam and Kanawha Counties about a mile and a quarter from the Allen farm; (4) he has had experience in the sale of land in that vicinity both with and without mineral rights; (5) he has acted in an advisory capacity in the sale and purchase of other real estate

in the vicinity of the Allen property; (6) he is familiar with the property involved in this case; and (7) he has been a licensed real estate broker in this State since 1938.

The extent of Stuart's qualifications to appraise the damages to the residue after the taking of the Big Lime formation and its activation was greatly limited on cross-examination. On cross-examination this witness admitted that he did not know the acreages of the tracts of land about which he gave advice, and that in a number of instances those tracts were dissimilar in character to the Allen land. From his testimony on direct examination it appears that he is familiar with the acreages of the Allen land only "as I have been told"; and that he had "not studied it closely". In answer to the inquiry: "Are you familiar with the acreage of the Allen farm?", he answered, "Yes, sir, I have been—I am familiar with it as I have been told"; and in answer to the further inquiry: "Have you been familiar with that particular property?", he replied, "Yes, sir, * * * I have known it. I have not studied it closely, but I know Mr. Allen." In the main this witness's testimony concerning the value of eighteen thousand dollars before the taking of the Big Lime formation and the value of nine thousand dollars after the formation has been acquired and activated is based upon sales of property at Lake Washington, and on his services in an advisory capacity as to valuations for various persons purchasing and selling property in the vicinity of the Lake Washington development. His testimony, however, bearing as it does on damages to the residue of the property sought to be acquired, though meager and having little probative force, is admissible in evidence. We say this because it appears from Stuart's testimony that he has some knowledge of property values in Curry District, and, therefore, qualifies under the rule which has become a part of the case law of this State, enunciated in *State* v. *Sanders*, 128 W. Va. 321, 329, 36 S. E. 2d 397. In that case, which was a proceeding in eminent domain, involving the acquisition by the state road commission of land situated in the Town of Madison in Boone County, this Court held

admissible testimony of a witness, who testified that though he had knowledge of the value of land in the Town of Madison, he owned no property there, and this witness did not, or perhaps could not, compare the value of the land in controversy in the Town of Madison with the value of the property which he owned in other parts of Boone County. At pages 329 and 330 in the opinion in the *Sanders* case, this Court observed: "Was he [the witness] qualified to express an opinion? While the witness' qualifications may be meager, we cannot say that his opinion as to the value of land in the Town of Madison was not based on adequate knowledge. *C. & O.* v. *Allen,* 111 W. Va. 481, 163 S. E. 22. He was to some extent qualified, and the court committed no error in admitting his testimony. *Railroad* v. *Coal Co.,* 75 W. Va. 423, 444, 83 S. E. 1031." For what it may be worth for jury determination, we are, therefore, of opinion that the testimony of the defendants' witness Stuart was admissible in evidence.

Defendants' only other witness, Roy Arbaugh, testified that it would cost about four thousand dollars to drill through the Big Lime formation, after the Allen property sought to be acquired has been activated for gas storage purposes, seems to be better qualified than Stuart to testify concerning damages to the residue of the Allen land. Arbaugh started dressing tools in Lincoln County in the fall of 1907, and has followed that occupation practically ever since. Until the year 1934, when he sold his equipment consisting of five strings of drilling tools, he had engaged in the drilling of oil and gas wells in Cabin Creek District, in Kanawha County, and had worked in Putnam County and the other counties mentioned above. Arbaugh testified that before the establishment of the gas storage pool by petitioner in Curry District, Putnam County, he had worked on one well on Lick Creek in that district, and another on Buff Creek in the same district; and that after the storage pool has been established "It would cost you too much money for the small pay you get in the berea, as a rule, in this country." He

further testified that if drilling was undertaken to a sand or formation below the Big Lime formation, after the storage pool has been established, it would be necessary to drill an eight-inch hole and set an eight-inch line on the top of the Big Lime formation; and also "a string of seven inch pipe on the berea shelf and cement it or mud it in order to protect the lime if you have got gas." In answer to the inquiry whether he was in a position to state the value of the Big Lime stratum on the Allen property, he answered, "Well, I don't know exactly—I couldn't say I have knowed of any sales on that part."

The evidence, introduced by petitioner, bearing on the damages to the residue of the property after the Big Lime formation has been taken and activated, stated in some detail is:

Petitioner's witness, C. G. Krebs, testified that the establishment of the pool in the Big Lime formation under the Allen land would not "diminish the value of the farm to any extent." Veleair C. Smith stated that, "there is no loss of value." H. Isaiah Smith testified to the effect that there would be no diminution of value by reason of the establishment of the storage pool and the taking of the Big Lime formation. The testimony of E. C. Stump and R. H. Adkins is to the effect that the establishment of the pool would not interfere with the productivity of the Berea well on the Allen land; and petitioner's witnesses Adkins, Krebs, Veleair C. Smith and Robert C. Lafferty, a consulting geologist and engineer, all testified that the cost of drilling through the Big Lime formation after the gas storage pool is formed would not exceed five hundred dollars. In this regard Veleair C. Smith testified that Arbaugh's estimate of four thousand dollars as the cost of drilling through the Big Lime formation after the pool has been activated "is ridiculous"; and Adkins, Krebs and Veleair C. Smith testified that there is no likelihood of production below the Big Lime formation other than in the Berea sand.

Petitioner's witness, H. J. Simmons, general superintendent of Godfrey L. Cabot, Inc., who was engaged in

the drilling of wells with his father from 1930 to 1937 in Calhoun County, and has been associated with the Cabot Company as a geologist since 1937, and for the past three years has been general superintendent of that company, which has no connection with petitioner, testified from his own experience that the fact that gas was stored in the Big Lime formation in another storage pool located in Putnam County did not interfere in any way with actual drilling by Godfrey L. Cabot, Inc., to a lower or deeper stratum.

Having held that Stuart's testimony, though objected to, was admissible, and having detailed Arbaugh's testimony bearing on the damages to the residue, and the testimony of the witnesses for petitioner, bearing both on the value of the property sought to be taken and damages to the residue, we now reach petitioner's ground of error: The verdict of the jury in the amount of six thousand dollars is excessive.

The answer to the question raised by this ground of error lies in the statement of facts at the beginning of this opinion, bearing on the market value of the property sought to be taken and damages to the residue. To restate these facts in detail would unduly lengthen this opinion. As heretofore indicated, the defendants, who had the burden of proof as landowners which is so in every proceeding in eminent domain, offered no evidence bearing directly on the fair market value of the property actually sought to be taken; and the petitioner's evidence shows clearly that the fair market value of the property sought to be taken does not in any event exceed $13.60 an acre, or $2,380.00 for the Big Lime formation. It follows that unless the defendants have adduced in this record sufficient evidence as to damages to the residue to sustain the difference between the verdict of $6,000.00 and the sum of $2,380.00, the verdict is excessive.

In our opinion, as heretofore indicated, Stuart's testimony, though admissible is meager indeed, and it is offset by the testimony of competent witnesses for petitioner,

C. G. Krebs, Veleair C. Smith, and H. Isaiah Smith, who testified, respectively, that the taking of the Big Lime formation under the Allen farm and the activation thereof for gas storage purposes would "not diminish the value of the farm to any extent"; would result in "no loss of value"; and that the value of the Allen tract of land would not "be diminished by the taking of the Big Lime formation"; and is completely contradicted by the testimony of petitioner's witnesses Stump, Adkins, Veleair C. Smith, Lafferty and Simmons. Stump's testimony is to the effect that the taking of the Big Lime formation will result in no interference with the productivity of the present Berea well on the Allen tract. Adkins, Krebs, Veleair C. Smith and Lafferty testified that the cost of drilling through the Big Lime formation after it has been activated would not exceed five hundred dollars; and Smith testified that Arbaugh's estimate of four thousand dollars "is ridiculous". From the testimony of petitioner's witnesses Adkins, Krebs, and Veleair C. Smith, it appears that there is no likelihood of production below the Big Lime formation other than in the Berea sand; and, finally, petitioner's witness Simmons testified that the fact that gas was stored in the Big Lime stratum in another storage pool located in Putnam County did not deter Godfrey L. Cabot, Inc., from drilling through it to a deeper stratum. Arbaugh's testimony is completely neutralized in this record by the fact that (1) there is an existing gas lease on the Allen tract, which the evidence shows will produce gas in paying quantities for fifteen or twenty years, so that if there is any cost for drilling on the farm to and through the Big Lime formation, it will be at the expense of the lessee in that lease, and not at defendants' cost; and (2) by the stipulation contained in the record that petitioner, United Fuel Gas Company, which has acquired the Big Lime leasehold operating rights from the independent owner, R. H. Adkins and others, doing business as Buff Creek Gas Company that "it will not interfere with, enter upon, or otherwise use the surface of said land in and about its storage operation, or any other portion of that

land other than the Big Lime formation." So under the facts portrayed by this record, we are of opinion that the verdict of the jury in the amount of six thousand dollars is excessive in that it exceeds the maximum sum of $2,380.00, the amount established by petitioner as the fair market value of the land sought to be taken.

While it is true that courts rarely disturb verdicts of juries in condemnation proceedings, if founded on any reasonable view of conflicting evidence bearing on the question of what is just compensation, *Baltimore & Ohio Railroad Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868, and *Tennessee Gas Transmission Co.* v. *Fox,* 134 W. Va. 106, 58 S. E. 2d 584, this Court in the syllabus to *Norfolk & Western Railway Company* v. *Nighbert,* 46 W. Va. 202, 32 S. E. 1032, held: "A verdict finding an amount of compensation in a proceeding by a railroad company to condemn land that is so high that it must be attributed to prejudice, passion, bias, partiality, or mistake of law or judgment, will be set aside." See also *Virginian Power Co.* v. *Brotherton,* 90 W. Va. 155, 110 S. E. 546.

The petitioner further assigns error to the action of the court in refusing to admit certain testimony of petitioner's witnesses Stump, Ward, Lowther, Cutler, Kirk and Krebs, bearing on the value of the property taken, contained in several avowals:

(1) Stump's testimony that the value of the property sought to be acquired, as distinguished from damages to the residue, was $13.60 an acre computed from the fair market value on a lease basis;

(2) Ward's testimony to the effect that the fair value of the property taken was $13.59, based upon a computation on a lease basis and using a discount method usually employed in the banking business;

(3) Lowther's testimony that the property taken was worth a dollar an acre on a lease basis for 3,855 acres acquired for storage purposes by Hope Natural Gas Company in West Virginia, and 17,000 acres in Pennsylvania;

(4) Cutler's testimony of the value of one dollar an acre based on the outright purchase of 23,652 acres acquired for gas storage purposes by Hope Natural Gas Company;

(5) Kirk's testimony of the value of the Big Lime formation under the Allen land on a lease basis of $1.12 an acre, and this witness's testimony to the effect that on a lump sum cash award the value is negligible; and,

(6) Kreb's testimony that "The value would be nominal or practically worthless."

We are of opinion that the trial court improperly refused to admit the testimony of the witnesses, except that of petitioner's witness Cutler, contained in the various avowals. The testimony of Stump and Ward is admissible as it presents a reasonable basis, and perhaps the best basis, for the computation of the value of the property actually sought to be taken. On the basis that the ordinary life of gas wells in the general vicinity of the Allen property is twenty years, Stump used a four per cent discount on a dollar an acre a year over a twenty-year period, and testified that petitioner had agreed with other landowners on a cash basis of $13.60 an acre. In point 6 of the syllabus of *Baltimore & Ohio Railroad Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868, this Court held: "In ascertaining the value of land taken, the price voluntarily paid, by the applicant, to another land-owner for land similarly situated, is proper evidence to be considered by the jury, where damages to the residue are not involved. Distinguishing *Buckhannon & Northern R. R. Co.* v. *Great Scott Coal & Coke Co.,* 75 W. Va. 423." To the effect that evidence of prices paid others by the condemner for land and damages to the residue, though located in the same vicinity, is inadmissible in evidence, and the admission of such evidence over objection is reversible error, see point 12 of the syllabus of *Buckhannon & Northern Railroad Co.* v. *Great Scott Coal & Coke Co.,* 75 W. Va. 423, 83 S. E. 1031. For a succinct statement of the rule prevailing in this jurisdiction, see 6 M. J., Eminent Domain, Section 88.

From the avowal of the testimony of petitioner's witness, George Ward, it appears that in the performance of his duties in the trust department of The Charleston National Bank of Charleston, West Virginia, he had executed storage leases to United Fuel Gas Company. This witness estimated the present cash value of the Allen lease at $13.5903. In answer to the hypothetical question: "Assuming that the rental value for an underground gas storage stratum was one dollar per acre per year, and that the estimated life of the lease is twenty years, and using a four per cent discount factor, what would be the present value of the stratum under one acre of land, using the method you have described?", Ward replied: "13.-5903, and four additional decimal points, if you want to go that far." The method of computation employed by Ward is admissible in evidence, in our opinion, for the reasons heretofore stated in our holdings in the cases of *Buckhannon & Northern Railroad Co.* v. *Great Scott Coal & Coke Co., supra,* and *Baltimore & Ohio Railroad Co.* v. *Bonafield's Heirs, supra.*

We are likewise of opinion that the testimony of petitioner's witnesses Lowther and Kirk is admissible, because the estimate of the present market value of the property sought to be acquired is upon a lease basis, and, though the storage acreage upon which the witnesses computed the value is not in the vicinity of the Allen tract, the uniformity of underground formations suitable for gas storage purposes renders the testimony of these witnesses admissible. The rule would be otherwise if this case dealt with the acquisition of the surface of land in a proceeding in eminent domain.

The Krebs testimony that "The value would be nominal or practically worthless", contained in the Krebs avowal, is admissible. Krebs, a trained and experienced geologist, was entitled to give the opinion contained in that avowal.

We are, however, of opinion that the testimony contained in the Cutler avowal to the effect that 23,652 acres

of storage strata acquired by Hope Natural Gas Company on outright purchase at a dollar an acre, is inadmissible and the court properly refused to admit it. We say this because the instant proceeding is a proceeding which involves both the property actually sought to be taken and damages to the residue. The testimony involved in the sale of property, other than that sought to be acquired, comes within the exception set forth in point 6 of the syllabus of *Baltimore & Ohio Railroad Co.* v. *Bonafield's Heirs, supra,* which holds that in ascertaining the value of land actually taken the price paid to another landowner similarly situated is proper evidence, "where damages to the residue are not involved."

The trial court refused to give petitioner's instructions Nos. 1, 1A, 7, 10, and 10A.

"Plaintiff's" instruction No. 1 reads: "The Court instructs the jury that under the evidence in this case you are not justified in establishing a value of the property taken i. e. the Big Lime stratum underlying defendant's 175-acre tract of land in excess of $13.60 per acre or a total of $2380.00"; and "Plaintiff's" instruction No. 1A is identical with "Plaintiff's" instruction No. 1, except that the words "a total of" in instruction No. 1 are omitted from instruction No. 1A. The trial court, in our opinion, committed prejudicial error in refusing to give petitioner's instruction No. 1, or in lieu thereof petitioner's instruction No. 1A, inasmuch as these instructions bear only on the value of the property actually taken, and the evidence in this record fully establishes that the value of the Big Lime stratum did not exceed $13.60 an acre, or a total of $2,380.00.

"Plaintiff's" instruction No. 7, which instructed the jury that "in ascertaining the value of the property taken, the price voluntarily paid by the condemnor to another landowner for like property, similarly situated, is proper evidence to be considered by the jury", was properly refused by the trial court, as this instruction is adequately covered by "Plaintiff's" instruction No. 6,

which the court gave. Likewise the trial court, in our opinion, did not commit prejudicial error in refusing to give "Plaintiff's" instruction No. 10 and No. 10A, as these instructions also were covered by "Plaintiff's" instruction No. 6. It is not prejudicial error for a trial court to refuse to give an instruction which is adequately covered by another instruction which the court gave. *Chesapeake & Ohio Railway Co. v. Johnson*, 137 W. Va. 19, pt. 4 syl., 69 S. E. 2d 393; *Kelly v. Rainelle Coal Co.*, 135 W. Va. 594, 64 S. E. 2d 606; *Frampton v. Consolidated Bus Lines*, 134 W. Va. 815, 62 S. E. 2d 126; *Burdick v. City of Huntington*, 133 W. Va. 724, 57 S. E. 2d 885; and *Somerville v. Dellosa*, 133 W. Va. 435, 56 S. E. 2d 756.

For the foregoing reasons the judgment of the Circuit Court of Putnam County is reversed, the verdict set aside, and a new trial is awarded.

*Judgment reversed; verdict set aside; new trial awarded.*