Elmer MILBY et al., Appellants,

v.

LOUISVILLE GAS & ELECTRIC COM-
PANY, Inc., Appellee.

Court of Appeals of Kentucky.

June 21, 1963.

As Modified on Denial of Rehearing
Feb. 7, 1964.

Davis Williams, Munfordville, for appellants.

Stokes A. Baird, Charles R. Richardson, Munfordville, Peter, Heyburn & Marshall, Gavin Cochran, Samuel R. Wells, Louisville, for appellee.

CULLEN, Commissioner.

The Louisville Gas and Electric Company brought proceedings, under KRS 278.501, to condemn the right to store natural gas in an underground storage field below a 92-acre tract of farm land owned by the Milby family. Certain surface easements necessary for the storage operations also were being condemned. The jury in circuit court awarded damages of $13,000 and judgment was entered accordingly. The Milbys have appealed, primarily on the basis that the damages are inadequate, and the gas company has cross-appealed, contending the damages are excessive.

A number of points will require discussion, but we shall say at the outset that the damages are excessive. The taking involved three things: (1) The surface easements; (2) the use of an existing gas well; and (3) the underground storage rights. (The Milbys also claimed there was a taking of existing gas in the underground field, but there was no probative evidence of the amount or value of existing gas.) Witnesses were permitted on the trial to put a separate market value on each item of damage instead of confining their estimates to before and after values of the whole tract, which violated the rules stated in Commonwealth v. Stamper, Ky., 345 S.W. 2d 640, so we shall discuss the estimates as made without implying approval of the approach used.

The highest estimate of damage by the condemnor's witnesses was $1950 for the surface easements, $2175 for loss of the use of the existing gas well, and $800 for the storage rights—a total of $4,925. The highest estimate by the Milbys' witnesses was $2,000 for the surface easements, $12,900 for the existing well, and an astronomical figure of some $6,000,000 for the storage rights. Most of the testimony of the Milbys' witnesses concerning value of the storage rights was stricken, and it all should have been stricken (proper objections and motions to strike were made) because the witnesses obviously were not undertaking to express opinions as to *market value* but were estimating value on the basis of what it would cost the gas company to provide substitute *surface* storage facilities, such as metal tanks. Such evidence clearly was improper under the rule stated in West Virginia, P. & T. R. Co. v. Gibson, 94 Ky. 234, 21 S.W. 1055, that:

"* * * The issue * * * is not what the land is worth to the appellant

[condemnor], or how profitably it may use it in its business, nor the costs and expenses it would be compelled to incur in obtaining other property, or in fitting it for its business, if it failed to obtain that particular property. * * *"

See also 2 Lewis, Eminent Domain, sec. 706, p. 1231.

The witnesses for the Milbys said that the existing well, which produced gas only for use in the dwellings and outbuildings on the farm, furnished a supply of gas that would cost $300 a year if purchased from a gas utility company. Because of this production the witnesses said the well was worth some $12,000. Obviously this value estimate is excessive. $7,500 invested at four percent would produce $300 a year, so in our opinion a value in excess of $7,500 could not be attributed to the well. Even the latter sum would be too high because it does not allow for the expenses of servicing and maintaining the well, nor for depreciation of the equipment. (The evidence shows that the well did not produce gas of commercial value—the gas was suitable only for use on the farm.)

Since the top value attributable to the existing gas well is less than $7,500 and the highest estimate of damages for the surface easements was $2,000, the combined damages for these two items would be something less than $9,500. The evidence for the gas company was that the storage space had a value of $800, reached by capitalizing at six percent the standard rental being paid for *leases* of other comparable storage space. We think the jury would have been entitled to capitalize the rentals at *four* percent instead of six, which would put the value of the storage space at $1,200. Adding this to the other damages would make a total below $10,700. It thus is apparent that the verdict of $13,000 is in excess of the highest amount that could be supported by the evidence.

■ We are reversing the judgment because of excessive damages. Upon retrial the case will be governed by the principles laid down in Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844, particularly the principles that *taking* damages are not to be separated from *resulting* damages, and that the evidence is to be addressed solely to difference in *market value* of the whole tract before and after the taking.

■ Under the Sherrod case and under Commonwealth, Department of Highways v. Stamper, Ky., 345 S.W.2d 640, the witnesses in estimating "before" value will be entitled to give consideration to the existing gas well and to the underground storage space as elements of value, to the extent that they can be shown actually to enhance the *market value* of the tract. But this means an actual *market* enhancement—it means that the existence of the well and the storage space must be factors that would enter into the sale price on an available potential market.

■ As concerns the well, it appears that the availability of gas for domestic use on the farm might enhance the market value of the farm in some reasonable relationship to the value of the gas supply from the well, so it would be proper for the witnesses to testify as to what features of the well would tend to enhance the value of the farm, and the extent of the enhancement. But such testimony would have probative value only up to the point the estimated enhancement would be credible to reasonable men. See Commonwealth, Department of Highways v. Tyree, Ky., 365 S.W.2d 472. As indicated above, an estimated enhancement of more than $12,000 for a well producing gas worth only $300 a year would not be credible.

■ As concerns the underground storage space, a difficult problem is presented, because, as far as the record in this case shows, there have been no known *sales* in Kentucky of underground gas storage rights nor any sales of *land* in which the existence of underground gas storage space was a

factor in the sale price. However, there have been a substantial number of *leases* of underground storage space.

The gas company introduced evidence that leases of underground gas storage space had been obtained on a large number of tracts in the Magnolia Storage Field (of which the Milby land is a part) at a standard rental of 50 cents per acre per year. We think that an established lease value is a fair basis from which to measure market value. In Cornwell v. Central Kentucky Natural Gas Co., Ky., 249 S.W.2d 531, this Court tacitly approved valuation of underground gas storage space by capitalizing a lease value of 50 cents per acre per year, which was shown to be the going lease value in the community. A similar approach was approved in United Fuel Gas Co. v. Allen, 137 W.Va. 897, 75 S.E.2d 88. So it would seem that upon the new trial of this case the witnesses would be entitled to give consideration to lease value of the underground storage space as a factor entering into the market value of the Milby tract.

A problem arises, however, from the fact that the only leases referred to on the first trial were leases held by the Louisville Gas and Electric Company on other tracts in the Magnolia Storage Field. The Milbys argue that evidence of the rental paid in such leases is not admissible under the rule that evidence of prices paid by the *condemnor* for similar properties is not admissible. See Stewart v. Commonwealth, Ky., 337 S.W.2d 880. And the gas company, although it is willing that the lease rentals be considered as evidence of market value, argues that *no one* has leased any underground gas storage space except public service corporations having the power of eminent domain; that such companies have no use for one tract in a large storage field unless they can acquire control of the entire field (because gas pumped into the space under one tract could escape to other parts of the field); that the storage space has no use value except for the special purposes of a public service corporation; and therefore

the storage space under a single tract has *no* actual market value.

Both parties agree, however (and there is evidence in the record to support it), that there is strong competition among gas suppliers and gas pipeline companies for underground storage space. This fact, we think, distinguishes this case from Peoples Gas Light & Coke Co. v. Buckles, 24 Ill.2d 520, 182 N.E.2d 169, where it appeared that the underground storage space sought to be condemned had no use value to anyone other than the particular condemnor for one particular project.

In view of the fact that there is a competitive demand for underground gas storage space it is our opinion that rental prices paid in negotiated transactions for such space should be entitled to consideration as bearing on the market value of the land below which the space lies, even though the demand is only by public service corporations having the power of eminent domain, and even though the demand for an individual tract is conditioned to some extent on the prospect of the corporation's being able to acquire control of the entire storage field. It also is our opinion that the mere fact that the particular condemnor has succeeded in obtaining control of most of a particular field, and thus has created a situation in which no other public service corporation would have any use for the individual tract sought to be condemned, should not preclude the assignment of a market value to the lease rights in the tract sought to be condemned, in accordance with the rental price paid for leases of other comparable rights. Any other view would enable the condemnor to obtain parts of a storage field for nothing, even though the field as a whole would have a substantial value on a competitive market.

We do not mean that a rental price paid in one single isolated transaction could be considered as acceptable evidence bearing on market value. But the number of leases here involved (77), at a standard rental, is

sufficient, we think, to establish the rental as a reliable indication of value.

Our conclusion, then, is that upon another trial of this case the established rental price paid for leases of underground gas storage space as shown by a substantial number of negotiated transactions may be considered as a factor bearing on market value of the Milby land, regardless of whether the leases were taken by the particular condemnor here or by some other public service corporation having the power of eminent domain.

We are required to give an attention to another factor claimed to have a bearing on the market value of the Milby land. It appears that prior to the institution of the proceedings to condemn the storage rights under the Milby land the gas company had pumped some gas into the Magnolia Storage Field, through wells located on other tracts. It is claimed that some of that gas had flowed into the space under the Milby land and therefore, under the decision in Hammonds v. Central Kentucky Natural Gas Co., 255 Ky. 685, 75 S.W.2d 204, such gas was subject to being recovered by the Milbys as their personal property. As hereinbefore stated, there was no evidence of the amount or value of such gas. It is our opinion that upon another trial a qualified witness could be permitted to testify as to enhancement of the market value of the Milby tract by reason of the existence of a supply of gas underneath the tract, but such testimony would have credibility only to the extent that it had reasonable, rational and logical support. Certainly no substantial enhancement of value could be attributed to the gas supply in the absence of a showing that there was commercially recoverable gas of some substantial quantity.

What we have said concerning the major issues in the case makes it unnecessary for us to discuss many of the 23 separate claims of error asserted by the Milbys. However, some of the claims relate to matters that may arise on another trial, so we shall express our opinion concerning them.

A witness for the gas company was permitted to testify as to the value of the existing well on the Milby farm, *to the company for its purposes*. This was error, because as hereinbefore stated, the value to the condemnor is not the test. The existing well was a factor to be considered only as it enhanced the market value of the land.

Counsel for the Milbys, for purposes of cross-examination of one of the gas company's witnesses, should have been permitted to examine a paper which the witness had referred to in giving his testimony. See Wigmore on Evidence, 3rd Ed., Vol. III, sec. 762, pp. 108, 109.

The court properly awarded the burden of proof to the condemnor, both parties having appealed from the county court. See Commonwealth, Department of Highways v. Snyder, Ky., 309 S.W.2d 351.

The statements by the gas company's counsel, in argument to the jury, with reference to the status and character of the company as a public utility, were not improper, and there was no appeal to the personal and selfish interests of the jurors.

We do not consider it good practice for counsel, in closing argument, to address individual jurors by name.

Evidence as to assessed value of the land for tax purposes should not be admitted unless it is shown that the property owner turned in the assessment. See Commonwealth v. Gilbert, Ky., 253 S.W.2d 264, 39 A.L.R.2d 205.

On the direct appeal the judgment is affirmed; on the cross-appeal the judgment is reversed, for further proceedings in conformity with this opinion.