Matthew J. Jasen, J.
This is a condemnation proceeding brought pursuant to Conservation Law (Art. 3-A, § 86) to acquire gas storage rights in land owned by defendants.
Plaintiff is a public utility engaged in the business of producing, transporting, distributing and storing gas for ultimate public use. In connection with its business, plaintiff has been operating an underground gas storage reservoir in the Town of Collins, New York, commonly known as the Quaker Pool. Into this geological formation gas transported from Texas and Louisiana is injected for storage and withdrawn in periods of peak demand.
Plaintiff contends that defendants’ property is located within the Quaker Pool and, therefore, is subject to condemnation. It is also claimed that the defendants have a well on their property from which they are withdrawing the stored gas.
Condemnation proceedings are special proceedings and accordingly, pursuant to the provisions of CPLR 409 (subd. [b]): “ The court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised.”
A factual issue is raised by the defendants as to Avhether the property sought to be condemned is located within the Quaker Pool. •
Upon the papers submitted the court reaches the conclusion that the property is located within the Quaker Pool.
The remaining issues raised by the pleadings are questions of laAAr, to Avit:
(1) Has plaintiff failed to set forth a specific description of the property to be condemned and its location?
(2) Does the petition fail because it does not include, as property to be condemned, “ any commercially recoverable nati\Te oil and gas ? ’ ’
(3) Does the petition fail because it does not designate as property to be acquired all those geological formations below the Medina formation as well as water, oil, gas, minerals and any other properties contained in those geological formations?
*1031 (4) Has plaintiff failed to show that it is lawfully ” operating the Quaker Pool?
(5) Has plaintiff failed to show the necessity of the acquisition of defendants’ property?
(6) Do the provisions of the statute under which plaintiff seeks to condemn the property, violate the Fourteenth Amendment of the United States Constitution and sections 6, 7 and 11 of article I of the New York State Constitution, in that: (a) they are discriminatory and deny equal protection of the laws to defendants in favor of operators of underground storage reservoirs which were in operation prior to October 1, 1963; (b) they deprive defendants of property rights without due process of law and just compensation by (i) failing to provide payment for native oil and gas in place; (ii). depriving defendants of the value of geological formations below the formation sought to be condemned; (iii) depriving defendants of access to the lower geological formations without compensation; (c) they deprive defendants of property rights without due process of law in that the terms “ commercially recoverable ” and “ otherwise lawfully operate an underground storage reservoir ” used in the statute are so indefinite as to render the statute violative of constitutional requirements.
In answer to the first question of law raised by the pleadings this court is of the opinion that the property sought to be condemned is sufficiently described to identify the property.
The petition gives a metes and bounds description and then asks for storage rights in the “ Medina Foundation ” below it. The defendants concede that part of the ‘ Medina Foundation ’ ’ exists under the property sought to be condemned but claims there are both a red and white layer and the one or ones in which storage is sought should be specified together with the width, depth and breadth of the foundation.
A reasonable description depends, of course, on the nature of the property sought to be condemned. Under the circumstances here present, the description is sufficient to locate the foundation the plaintiff seeks to use for the storage of gas, as it affects the defendants.
The second question raised is whether the petition must designate as property to be acquired, commercially recoverable native oil and gas in place.
Section 86 of the Conservation Law does not require that the petition allege the presence or nonpresence of commercially recoverable native oil and gas. It only requires that, if such native oil or gas is present, compensation be paid for it.
*1032 Defendants also attack the sufficiency of the petition claiming that there are not designated as property to be acquired, all the geological formations below the Medina formation as well as water, oil, gas, minerals and any other properties contained therein.
On this point, it seems that plaintiff seeks only to condemn and acquire an interest in the Medina formation and no more, so as to operate a gas storage facility. Indeed, plaintiff is limited by section 86 of the Conservation Law only to acquire such rights as may be required to operate the gas storage reservoir.
The condemnor cannot take any more property than is necessary for the public use. (Matter of New York & Harlem R. R. Co. v. Kip, 46 N. Y. 546.) Consistent with this view, courts in other jurisdiction have held that condemnation of storage strata does not impair ownership right in other strata (Cornwell v. Central Kentucky Natural Gas Co., 249 S. W. 2d 531 [Ky]; United Fuel Gas Co. v. Allen, 137 W. Va. 897).
Certainly, defendants may offer proof to show that their use and enjoyment of the geological formation below the Medina Avill be damaged by plaintiff’s acquisition of storage rights in the Medina formation.
Let us noAV consider defendants’ contention that plaintiff has failed to show that it is “ laAvfully ” operating the Quaker Pool within the meaning of section 86 of the Conservation Law. The section provides, in part: “ Any corporation empowered to produce, transport, distribute or store gas within this state for ultimate public use, which holds an underground storage permit from the department as hereinbefore provided or which is otherwise lawfully operating an underground storage reservoir * * * shall, subject to the condemnation law of this state, have the authority to acquire such rights by condemnation ’ ’ (emphasis added).
Section 86 clearly grants condemnation rights under two different circumstances: (1) a corporation holding an underground storage permit, or (2) one laAvfully operating an underground storage reservoir.
Section 85, in turn, sets forth that permits are not required Ayhere underground storage reservoirs were placed in operation prior to October 1,1963, so long as the operation thereof was not abandoned.
It is conceded that plaintiff has for many years prior to 1963 regularly injected gas from Texas and Louisiana into the underground storage reservoir knoAvn as the Quaker Pool.
*1033 The defendants contend that since plaintiff does not have leases authorizing it to store under the entire surface acreage within the Quaker Pool, the injected gas by its nature, migrates throughout the pool and hence a trespass is committed when it flows under lands the plaintiff has not leased. This, defendants argue, makes the operation unlawful.
The court cannot agree with defendants in this contention. To accept defendants’ contention would render the statute meaningless, since the only gas companies that would be “ lawfully operating ” a pool would be those already having leases on 100% of the storage area — those having no need for condemnation.
The court is of the opinion that the Legislature intended to authorize a corporation which has substantial rights to an underground gas storage facility to institute a proceeding to condemn such surface lands not under lease.
Furthermore, defendants have been aware for many years that the plaintiff has been using the Quaker Pool for gas storage and have not objected that some of the injected gas had flowed under their lands.
Defendants also contend that no necessity has been shown why plaintiff must condemn storage rights since ‘ ‘ there has been no change of circumstances * * * which alter or in any wise change the situation which has prevailed for several years last past. ’ ’
While it is clear that private property cannot be taken for public use unless it is necessary for such public use, the necessity need only be a reasonable one (Hairston v. Danville & Western Ry., 208 U. S. 598; 19 N. Y. Jur., Eminent Domain, § 59 and cases cited).
Here we have a public utility who seeks the right to the use of the entire Quaker Pool as an underground reservoir for the storage of gas for ultimate public use. The consumer demand for gas varies seasonally. The underground storage of gas makes gas more readily and economically available to the consumer by permittting the building of quantities of reserve gas for withdrawal during periods of peak demands. The necessity for the acquisition of such gas storage rights in such property for such use is that the rights sought to be acquired are located within the boundaries of the Quaker Pool. Plaintiff already has acquired storage rights in most of the acreage where the Quaker Pool is located and now seeks to plug the well on defendants’ property so that the gas transported from the States of Texas and Louisiana to the Quaker Pool will not be withdrawn for private use but will bo available for public use. The public *1034 necessity of this acquisition has been adequately shown by the plaintiff.
The remaining legal issue raised by the pleadings is whether the provisions of the statute (Conservation Law, art. 3-A) under which plaintiff seeks to condemn the property, violate the Fourteenth Amendment of the United States Constitution and sections 6, 7 and 11 of article I of the New York State Constitution.
Defendants contend that the statute is discriminatory in that it favors operators of underground storage reservoirs who were in operation prior to October 1, 1963. This contention fails for two reasons. First, only a person within the class whose rights are invaded has standing to raise a constitutional objection. (Matter of Davis v. Board of Elections, 5 N Y 2d 66; McGowam v. Maryland, 366 U. S. 420.) Since defendants are not in either of the classes covered by the statute, they cannot avail themselves of any constitutional objection. Also, assuming that defendants had standing to object, the fact that the statute operates, in a sense, in favor of an existing use, does not make it unconstitutional. Classifications between existing and new enterprises are permissible so long as the classifications arc not arbitrary or unreasonable. (City of New York v. Kelsey, 158 App. Div. 183, affd. 213 N. Y. 638; Watson v. Maryland, 218 U. S. 173.)
This court is of the opinion that the statute as it favors existing operators of underground storage reservoirs prior to October 1, 1963, is not unreasonable or arbitrary.
Defendants also claim that subdivision 2 of section 86 of the Conservation Law which provides: ‘ ‘ The value of any property condemned pursuant to this section shall include the value of any commercially recoverable native oil and gas in place to the extent that the holder of the property interest being condemned has a right thereto ” is unconstitutional in that it deprives them of property without due process of law and without just compensation. Specifically, defendants contend that the section is unconstitutional since it fails to provide for compensation for native gas in place which is used to form a “cushion” or base for the gas which is injected. Were the native gas for the “cushion” not in place, they contend, the plaintiff would be required to purchase gas to create the base upon which it would inject transported gas for removal. To permit the plaintiff to seize for its use a “ windfall ” of millions of cubic feet of low pressure natural gas in place without compensation, the defendants claim, is unjust.
While defendants are entitled to just compensation for what is taken from them of value (N. Y. Const., Art. I, § 7, subd. [a]), they are not entitled to be recompensed for the taking of things *1035 having no value. Native gas which is not commercially recoverable has no value to the defendants.
As to damages, the test is not whether the native gas in place has any value to the operator of a storage facility but whether it has any value to the owner of the land.
Defendants further maintain that the statute is unconstitutional because it deprives them of the value of or access to geological formation below the Medina formation.
Plaintiff only seeks to condemn gas storage rights in the Medina formation in that portion of the Quaker Pool which underlies the property of the defendants. In other words, plaintiff is not asking for rights below the entire surface acreage but only in the Medina formation of the Quaker Pool. If, however, plaintiff’s condemnation of the Medina formation consequently damages defendants’ use and enjoyment of other parts or strata of their land, they are entitled to just compensation therefor. No question of constitutionality is presented, only a question of damages.
Finally, defendants contend that the phrases “ commercially recoverable ” and “ otherwise lawfully operating an underground storage reservoir ’ ’ are so indefinite as to render the statute unconstitutional.
It is the opinion of this court that the words “ commercially recoverable ’ ’ mean feasible in a business sense to undertake the recovery of the native gas in place. Phrases analogous to 11 commercially recoverable ’ ’ have been defined and construed by the courts numerous times. (See, e.g., United States v. Cannelton Sewer Pipe Co., 364 U. S. 76; Riddell v. Victorville Lime Rock Co., 292 F. 2d 427; 7A Words and Phrases, p. 538 et seq.)
As to defendants’ contention that the words “ otherwise lawfully operating an underground storage reservoir” are constitutionally vague, this court is of the opinion that the phrase means those operating gas storage reservoirs for public use prior to October 1, 1963, and who have not abandoned such operations.
Therefore, the court is of the opinion that the statute granting to public utilities the right to condemn recognized underground gas storage reservoirs is constitutional.
The court further finds that public use and interest require the condemnation of the storage rights in the Medina formation in that portion of the Quaker Pool that underlies the property of defendants described in the petition for the purpose of gas storage and that plaintiff is entitled to take and hold such rights upon the payment of just compensation therefor.
*1036 Submit order in accordance with this memorandum and providing for the appointment of Commissioners of Appraisal to ascertain the compensation to be made for the property to be taken.