HOME GAS COMPANY, Respondent, *v.* WALTER MILES et al, as Executors of HAROLD L. MILES, Deceased, et al., Appellants.

Third Department, February 13, 1975.

*Victor D. Borst, Jr.,* for appellants.

*Hinman, Howard & Katell (John M. Keeler* of counsel), for respondent.

KANE, J. Condemnation proceedings were instituted pursuant to section 23–1303 of the Environmental Conservation Law to obtain underground gas storage rights in a natural layer of earth known as the " Oriskany Sandstone " formation some 1,900 feet beneath farm lands owned by defendants in Schuyler and Yates Counties. While defendants' property covers some 95 acres, the sandstone formation deep beneath the surface is approximately six and one-half miles long and one and one-half to two miles wide and some 15 feet thick. This entire egg-shaped area is known as the Wayne-Dundee gas storage field and spreads over approximately 7,800 acres. Over a period of time plaintiff accumulated the right to store gas from a majority of the various landowners of this formation. Originally this field produced natural gas, but was later abandoned when the producers drained it of commercially recoverable gas. At the present time the storage of gas is effectuated by injecting gas, transmitted to this area by pipeline from the southwestern part of the United States, into wells located in the field there to remain until the demand therefor arises. In order to contain this gas in the field with the required pressure to make it recoverable, a

constant quantity of cushion gas must be maintained in the field to supplement or replace whatever portion of the native gas that remained after original production ceased. In this proceeding defendants contend they are entitled to be compensated not only for the taking of the underground storage rights, but also for the taking of native gas by plaintiff in the course of the storage operation. Additional claim is made for other items of damage related to an abandoned well on the premises. Hearings before the commissioners were held on nine different days over a period of 22 months. A great deal of expert testimony of a highly technical nature was offered as to real property values, the production of natural gas and the operation of gas storage areas underground.

In the report of the commissioners, it was concluded that defendants were entitled to an award of $20,361 computed as follows:

| | | |
|---|---|---|
| Market value of property with gas storage rights .................. | $28,432 | |
| Market value of commercially recoverable native gas in place......... | 5,120 | |
| | $33,552 | |
| Market value after condemnation... | 14,216 | |
| Loss in market value...................... | | $19,336 |
| Stipulated value of abandoned well.......... | | 1,000 |
| Rental value of temporary easement.......... | | 25 |
| Total ............................. | | $20,361 |

In arriving at a fair market value, the commissioners placed a unit value on the property of $300 per acre, $150 of which represented the value of the surface land for farming, residential and recreational uses and $150 of which was an added increment for the enhancement value of the property for subsurface gas storage use. To this sum was added $72.30 per acre for commercially recoverable native gas. Interest was then awarded from October, 1963, the effective date of the statutory provisions for this proceeding on the theory of a *de facto* taking by plaintiff as of that date.

The plaintiff's appraiser, on the other hand, placed a value of $20 per acre for the gas storage rights based upon a study of comparable sales after making necessary adjustments. He testified that the value of defendants' property prior to the taking was $15,400 and the after value was $12,500 which included $1,000 as the stipulated value of the abandoned well.

The court at Special Term set aside the award of the commissioner's as so excessive as to shock the conscience of the court and its sense of justice and directed a new trial before new commissioners unless the defendants agreed to accept $3,000 as full compensation.

.It is clear that the commissioners applied erroneous standards of valuation. There is no support in the record for a valuation of $150 per acre for gas storage rights, other than the unadjusted comparable sales recounted in the testimony of defendants' appraiser. While the use of comparable sales in evaluating realty interests is proper, the values derived from these sales must be properly adjusted when wide divergencies exist, otherwise they are insufficient to support an award (*Latham Holding Co.* v. *State of New York*, 16 N Y 2d 41; *Matter of Taylor* v. *State of New York*, 39 A D 2d 984; *Merrithew* v. *State of New York*, 38 A D 2d 996; *City of Troy* v. *Manufacturers Nat. Bank*, 30 A D 2d 889). Furthermore, in determining the proper amount of compensation to be made under these circumstances the measure must accurately reflect the actual loss to the landowner (*City of Buffalo* v. *Clement Co.*, 28 N Y 2d 241, rearg. den. 29 N Y 2d 640; *Rose* v. *State of New York*, 24 N Y 2d 80). In this instance the market value of the underground storage rights is severely limited as only the plaintiff is permitted to store gas in the Wayne-Dundee field (Environmental Conservation Law, § 23–1301). Since the highest and best use of defendants' property remains unaffected by the taking, just compensation for condemnation of the underground area is determined by computing the fair market value of the whole property before the taking and deducting the fair market value of the untouched remainder after the taking (*Acme Theatres* v. *State of New York*, 26 N Y 2d 385; *Diocese of Buffalo* v. *State of New York*, 24 N Y 2d 320). Plaintiff's appraiser correctly based his value of $20 per acre for the storage rights upon comparable sales after making proper adjustments. This valuation finds support in the record and should have been adopted by the commissioners.

The trial court was also correct in finding a lack of evidence to support an award for gas in place. The law is clear that a landowner may recover compensation for such gas only if it is commercially recoverable native gas (Environmental Conservation Law, § 23–1303, subd. 5; *Iroquois Gas Corp.* v. *Gernatt*, 50 Misc 2d 1028, affd. 28 A D 2d 811, affd. 22 N Y 2d 694). The overwhelming testimony in this record established that any native gas that might exist was contained in one field but was

*not* commercially recoverable. Therefore, it had no value to the owner of the land and any award therefor must be rejected.

Finally, the determination that the proper date for valuing damages to defendants' property was November 5, 1969, the date that title passed to plaintiff, is quite correct. Any question of a *de facto* taking prior thereto can be resolved in the counterclaim which was previously interposed and severed from this proceeding.'

In rejecting the report of the commissioners, the trial court granted a conditional order providing that if defendant accepted the sum of $3,000 in full compensation in this proceeding, the award would otherwise be affirmed. This procedure is impermissible. In reviewing a report of Commissioners of Appraisal, a court is limited to confirming or rejecting the report. It may not weigh the evidence. Its powers are limited by statute and controlling case law. The report may be set aside only for irregularity or for error of law, or upon the grounds the award is excessive or insufficient (Condemnation Law, § 15; *Matter of Huie* [*Fletcher-City of New York*], 2 N Y 2d 168; *City of Troy* v. *Manufacturers Nat. Bank, supra*).

The order should be modified, on the law and the facts, by striking therefrom that portion thereof which conditionally granted a reduction in the award, and, as so modified, affirmed, without costs.

GREENBLOTT, J. P., SWEENEY, MAIN and LARKIN, JJ., concur.

Order modified, on the law and the facts, by striking therefrom that portion thereof which conditionally granted a reduction in the award, and, as so modified, affirmed, without costs.