# CHARLESTON.

THE VIRGINIAN POWER CO. *v.* W. T. W. BROTHERTON *et als.*

Submitted January 25, 1922.     Decided January 31, 1922.

1. EVIDENCE—*Opinion Evidence as to Value of Land Condemned Based on Hearsay Incompetent, But Competent if Witnesses Have Personal Knowledge.*

   In a proceeding to condemn land for the use of a public service corporation, opinion evidence of a witness based solely on what others may have told him of offers made for other lands and what they may have told him concerning the land involved, is incompetent and should be rejected. Such opinion evidence must be based on some knowledge of the witness himself and not on what he may have gleaned from information from others. But if a witness have some personal knowledge of the land to be taken, its location, fertility, and adaptability to agriculture etc., he may give his opinion, its weight and credibility being a question for the jury. (p. 157).

2. SAME—*Evidence of Sales of Lands of Similar Character Not in Immediate Vicinity May be Considered in Fixing Value of Land.*

   Evidence of the sales of other lands of similar character, though not in the immediate vicinity of the land to be taken, may have some bearing on the question of the value of the land to be taken, and may when given in evidence be con-

sidered by the jury in estimating the value of such land..
(p. 159).

3.   EMINENT DOMAIN—*Verdict in Excess of Highest Value Fixed
     by Witnesses Should be Set Aside as Excessive.*

     The verdict of a jury in such proceeding, which includes
     as compensation for the actual acreage taken an amount far
     in excess of the highest value per acre placed thereon by
     witnesses, is excessive and should be set aside on that ground
     (p. 159).

4.   SAME—*Instruction to Consider Every Circumstance Affecting
     Value of Land Held Erroneous.*

     An instruction to the jury, otherwise proper, defining the
     true measure of damages in a condemnation proceeding, but
     telling the jury they may in ascertaining the amount of dam-
     ages consider every circumstance, present or future, which
     affects its then value, is calculated to mislead the jury and as
     authorizing merely speculative and indeterminate   damages.
     (p. 160).

5.   SAME—*Instruction That Applicants' Right to Occupy Entire
     Right of Way Taken May Properly be Considered in Estimat-
     ing Damages Held Proper.*

     An instruction telling the jury that in estimating the dam-
     ages in such a case they should taken into consideration the
     fact that the applicant would be entitled to occupy the entire
     right of way taken then and thereafter in the extension and
     operation of its plant and lines thereover, was properly sub-
     mitted to the jury.   (p. 160).

6.   SAME—*Instruction that Nothing Could be Allowed as Damages
     to Remainder of Land When Right of Way Only Was Taken
     Held Properly Refused.*

     An instruction on behalf of the applicant which would have
     told the jury that when only a right of way less than a fee
     is to be taken they could not allow anything by way of dam-
     ages to the residue of the land, was rightfully rejected by the
     trial court.   (p. 161).

Error to Circuit Court, Kanawha County.

Proceedings by the Virginian Power Company against W.
T. W. Brotherton and others to condemn land.   Judgment
for defendants, and plaintiff brings error.

*Reversed and remanded.*

*Payne, Minor & Bouchelle,* for plaintiff in error.

*D. W. Taylor* and *Morton & Mohler,* for defendants in error.

MILLER, JUDGE:

In a proceeding begun by plaintiff to condemn a right of way for a high power transmission line through defendants' land and to have the damages assessed therefor, the commissioners awarded the defendants for the right of way, less than a fee, taken, and damages to the residue, the sum of $140.00, but on exceptions taken to their award, the amount was increased by the verdict of a jury to $1,000.00.

The proposal of the plaintiff was to take, not the fee, but a mere easement or right of way over a strip 55 feet wide and 1040 feet in length, with right to defendants to use the land covered, not in use by petitioner, for all purposes of grazing and cultivation, the wires to be supported by steel towers twelve feet by thirty inches, the height fifty-four feet, and the wires to be strung above the ground about forty feet. The land is generally rough hill land, there being only about two acres of what may be called bottom land in the entire boundary of ninety-seven and one-half acres, located in Kanawha County, which was purchased by defendants in 1917, at the price of $3,000.00, mostly on time payments running over a period of nine years. The entire acreage covered by the right of way aggregates 1.34 acres.

In the first place the plaintiff would have us reverse the judgment below upon the following grounds: (1) that certain evidence of defendants' witnesses was incompetent, (2) that the evidence of these witnesses was based mainly on hearsay as to the market value and sales of land in the same community, (3) that such market values were based on sales made two years prior to the date of the present suit, of land located near Nitro, the site of the great powder plant of the United States built during the world war, and since sold and abandoned for that purpose.

As applied to the evidence and the witnesses for the defendants we do not think the grounds for rejecting the evidence are well founded. The evidence does not show that there had been many sales of land in the immediate vicinity

of defendant's land, so as to test the actual market value of their land. It is conceded that values were somewhat stimulated by the activities about Nitro, and the town of Dunbar, between it and the city of Charleston. Defendants' witness Lanham, from whom they purchased the land in 1917, and who knew this land and the surrounding lands and knew of the sales of one or two farms in the neighborhood, gave it as his opinion that the defendants' land immediately before the taking was worth $75.00 per acre, and immediately afterwards that its value was not over $30.00 per acre. W. T. W. Brotherton, one of the defendants, who resided on the land for a time after its purchase from Lanham, was acquainted with the value of lands in that vicinity, and knew of some sales, though nearer to Nitro or Dunbar than his land and of greater value on that account, yet gave it as his opinion that his land was worth $125.00 per acre just before the invasion by plaintiff, and thereafter that it was not worth over $30.00 per acre. He did not place his judgment as to value on prior or subsequent sales alone. He had knowledge of the land and of other lands and of their situation, and apparently put his judgment on this knowledge, unlike B. R. Brotherton, who seemed to base his opinion on offers made for defendants' land, what others had told him of their lands, and what they said they had sold their lands for. Opinion evidence of this character is not admissible, of course. 10 R. C. L. 956. But a witness acquainted with the land and its situation and the character of the soil and adaptibility to particular purposes may give his opinion as to its value. He is not and need not be regarded as an expert, but his evidence is competent, though its weight and credibility belong to the jury. *Cincinnati Gas Transportation Company* v. *Wilson,* 70 W. Va. 157, 162; *Buckhannon & Northern Railroad Company* v. *Great Scott Coal & Coke Company,* 75 W. Va. 423, 444. And what we have said respecting the evidence of particular witnesses applies of course to the evidence of all other witnesses relating to value. A witness must in such cases of course be qualified in some degree to speak, otherwise his evidence is worthless and incompetent.

We find with respect to the evidence of defendants' witnesses as to other sales of lands not in the immediate vicinity of defendants' land, such as the Thatcher farm, the Dr. McQueen land, and the Richardson land, much of it was admitted without objection, and the witnesses cross-examined on the subject. While such evidence may not have been entitled to much weight with the jury, it related to lands, some of them of similar character and not too remote from defendants' land, as to be wholly immaterial. This evidence did not fall within the rule of *Railroad Company* v. *Great Scott Coal & Coke Company, supra,* condemning evidence of the value of town lots admitted for comparison with the value of land in the country taken for railroad purposes.

The principal ground relied on for reversal is that the verdict and judgment are excessive, considered in the light of the evidence and the special finding of the jury on interrogatories submitted to them on the application of the plaintiff. The very highest estimate of the value of the defendants' land per acre was by the defendant W. T. W. Brotherton, who placed it at $125.00 per acre. No one valued it at a greater price. According to their answers to these interrogatories, the jury included in their verdict seven hundred dollars for the 1.34 acres covered by the right of way; one hundred and fifty dollars for the trees taken therefrom, being eight to ten in all; and one hundred and fifty dollars as damages to the residue of the land not taken. As these three items cover all the damages to which the owners of the land were entitled, it is apparent that the amount found as the value of the land or easement less than a fee, is not supported by the evidence and renders the verdict grossly excessive. The highest value placed on the trees destroyed was ten dollars each, or in all eighty to one hundred dollars, but the jury allowed one hundred and fifty dollars. True, one of the owners said the taking of the trees would in time possibly destroy the lateral support of the land on the hillside and cause it to slide; but was not this speculative in character, depending on a mere possibility? The other item, one hundred and fifty dollars damages to the residue of the land, was the sum total which the jury

allowed as damages to the residue of the land. It was this damage that the owners sought to magnify, because of the close proximity of the right of way to the house, barn and other outhouses, the line of the right of way being within about four feet of the barn. The barn was according to the evidence old and very much run down, and was covered by a patched up roof of different materials. The evidence shows that the wires were carried by steel towers, and that as they passed the barn and other buildings were far above them on the hillside. One of the elements of damages relied on by the defendant was the possibility of the towers and wires being blown down and falling on the buildings or persons and animals of defendants. But many authorities say that such elements of damages are too speculative and remote to be considered in a condemnation proceeding. True, there are some decisions, as on most questions, to the contrary. 20 C. J. 790, §241-g. The jury however must be regarded as having taken these matters into consideration, as there was some evidence admitted on this subject, when finding the damages for the residue of the farm.

The instructions to the jury given on behalf of the defendants are made the subject of other errors relied on. Of these number one, which undertook to define the true measure of damages, was too broad in so far as it told the jury that ''in ascertaining said damages the jury may consider every circumstance, present and future, which affects its then value.'' Of course the jury could not lawfully include speculative damages, but only those damages which would naturally flow from the proper and careful operation of the plaintiffs' property. This instruction was misleading and should have been modified to meet the law applicable to the case.

Instruction number two, rejected, was properly rejected, because it would have told the jury they might properly include speculative damages in their verdict, and that though there was no standard by which to ascertain them, they might and should add something therefor in their verdict.

Instruction number three properly told the jury that in

fixing the damages to which the defendants were entitled, they should take into consideration the fact that plaintiff would be entitled to occupy the entire right of way then and thereafter in the extension and operation of its plant and its lines through defendants' property. Instruction number four was to the same effect and was properly given in the charge to the jury.

Lastly, it is complained that the trial court erroneously rejected the applicant's instructions numbers one, and two. Both would have told the jury that they should not include in their verdict anything as damages to the residue of the land not covered by the right of way or easement taken.   These of course were properly rejected, according to the holding of *Cincinnati Gas Company* v. *Wilson, supra,* wholly negativing these propositions.

Because of the errors committed on the trial we must reverse the judgment and award the plaintiff a new trial, and it will be so ordered.

*Reversed and remanded.*