# CHARLESTON.

### JOSEPH B. CROWL v. BUCKHANNON AND NORTHERN RAILROAD CO.

Submitted October 24, 1922. Decided October 31, 1922.

1.  EMINENT DOMAIN—*Franchise Granted by City to Railroad Properly Admitted in Action Against Railroad by Owner of Lot for Damages by Change in Street Grades.*

    Where a municipality has granted a franchise to a railroad company to lay and maintain its lines over the streets, and to make changes in certain street grades in order to facilitate its operations, requiring it to indemnify and save harmless the municipality from all damages to persons and property in the exercise of the powers and privileges granted, it is not error to permit such franchise to go to the jury in a suit against the railroad company by the owner of a lot to recover damages occasioned by a change in the street grades. (p. 191).

2.    EVIDENCE—*Prices Voluntarily Paid for Lots on Same Street Similarly Situated With Lot Damaged by Change in Grade Properly Considered.*

In an action to recover damages to a lot, occasioned by a change of the grade in the street, evidence of prices voluntarily paid for lots on the same street, similarly situated, and in the immediate vicinity of the lot damaged, at or about the time the damages were occasioned, is proper and can be considered by the jury in ascertaining the market value of the lot before it was damaged.   (p. 192).

3.    EMINENT DOMAIN—TRIAL—*Measure of Damages to Lot by Change in Street Grade Difference Between Value Immediately Before and After Change, Less Special Benefits; Instruction on Measure of Damages for Change in Street Grade Held Proper.*

The measure of damages to a lot by reason of a change in the street grade is the difference between the value of the lot immediately before, and its value immediately after the change in the grade, less any special or peculiar benefits occasioned by the change in grade; and an instruction which tells the jury they may consider their view of the lot damaged, the condition thereof before and after the change of the grade, the opinion of witnesses, and all other evidence and circumstances proven; and if they believe the lot was injured and the market value diminished, they should allow as damages the amount of the difference in the market value of the lot immediately before and immediately after the change in the grade, supposing that the same were made at a single instant of time, is not erroneous as misleading and confusing; there being other instructions fully instructing them to deduct from the damages any special or peculiar benefits to the lot occasioned by such damage.   (p. 193).

4.    APPEAL AND ERROR—EVIDENCE—*Jury Sole Judges of Weight and Value of Conflicting Oral Testimony.*

The weight of evidence does not depend upon mere number of witnesses.   The jury are the sole judges of the weight and value of conflicting oral testimony.   (p. 193).

5.    SAME—*Judgment for Damages to Abutting Property Caused by Change of Street Grade, Based on Conflicting Evidence, Rarely Set Aside.*

The appellate court will rarely set aside a verdict and judgment in a suit for damages to abutting property caused by a change in a street grade, where the opinion evidence of the amount of damages sustained is conflicting.   (p. 193).

Error to Circuit Court, Marion County.

Action by Joseph B. Crowl against the Buckhannon & Northern Railroad Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Rollo J. Conley* and *Frank C. Haymond,* for plaintiff in error.

*Harry Shaw* and *Victor H. Shaw,* for defendant in error.

LIVELY, JUDGE:

Plaintiff, Crowl, obtained verdict and judgment for $3,250 against defendant for damages to his lot 66 x 132 feet situate at the corner of Morgantown Avenue and Merchant Street in the city of Fairmont, caused by defendant in making a change of grade in these streets immediately in front of this lot. In the year 1913 defendant had obtained a franchise from the city for laying its railroad tracks and operating its cars over certain streets, and had constructed an overhead crossing at the junction of Morgantown Avenue, Merchant Street, East Park Avenue and Water Street, about 45 feet distant from plaintiff's lot. The franchise required defendant to indemnify and save harmless the city from any damages to persons or property resulting from the construction or operation of defendant's operations. The construction of the overhead crossing necessitated a lower grade in Morgantown Avenue and Merchant Street, and the grades were lowered. The new grades made these streets at their junction, at the northwest corner of plaintiff's lot, about 6½ feet lower than the lot. Prior to the change of grade these two streets were paved, and plaintiff's lot on the Morgantown Avenue side had been leveled with that street, except a small portion on the east end where stood a small five room cottage. There was a sharp ascent in Merchant street southward along the lot from where it, Merchant street, intersected with Morgantown avenue, and the side walk along it was about 4½ feet above plaintiff's lot, it having been leveled down to the Morgantown avenue grade. The change in the grade of Morgan-

town avenue to accommodate the overhead crossing, made a steeper and more difficult grade in front of plaintiff's lot, and was not in accordance with the ordinance permitting the change in that street. Before the change plaintiff's lot was practically level with Morgantown avenue; after the change it was about 6½ feet higher than the street at one end, the southwest corner, and about level with it at the other. After the grades had been changed, the parties made some agreement by which the dirt on plaintiff's lot was used by defendant for making its approach to the overhead crossing, in consideration of which it agreed to build retaining walls to protect the lot from adjoining properties. Defendant afterwards purchased the adjoining lot, (Arnett's), removed the dirt therefrom also, and the wall was not necessary. It afterwards laid a cement side walk on the Merchant street side of plaintiff's lot.

On the trial nine witnesses were examined by plaintiff as to the value of the lot immediately before and after the change of grade, who stated the difference in value in favor of plaintiff at from $4,000 to $6,000. Plaintiff's estimate of his damages was $7,000. Defendant examined eighteen witnesses as to the value of the lot immediately before and after the changes, who testified that the special benefits resulting to plaintiff were from $1,000 to $4,000. The jury viewed the premises. The trial resulted in a verdict and judgment of $3,250, from which defendant prosecutes this writ.

The first error assigned is the introduction of the city ordinances granting permission to defendant to construct and operate its lines in the city, in which it was agreed that defendant would indemnify the city against damages to persons or property resulting from the construction and operation of plaintiff's lines of railroads. It is claimed that such evidence was immaterial, and prejudicial to defendant in that it led the jury to believe that defendant admitted liability and negligence in the case on trial, and tended to divert their minds from the issue, excite prejudice and mislead them. It is elementary that evidence having no direct connection with the case, which is remote, collateral or irrele-

vant; or which is calculated only to prejudice a party in the minds of a jury should be excluded. But we fail to see the application of that rule here. Defendant had changed the grades and caused the damages claimed. The city was primarily responsible for damages caused by a change of established grades in the streets, and if it had given permission to another to make the changes, as a condition that he should be responsible for damages, if any resulted, we cannot see wherein the jury would be excited or prejudiced by showing that fact. Defendant stepped into the shoes of the municipality and assumed its obligations in that regard. The ordinances were admissible to show the authority of defendant in making the alterations and changes, and its assumption of liability. We cannot see wherein this evidence could confuse, mislead or prejudice the minds of the jurors.

Defendant's second assignment of error is to the introduction of five deeds to it for other lots on the same street, (one adjoining plaintiff's lot) and in the immediate neighborhood, showing the prices voluntarily paid therefor, and about the same time that the damage to plaintiff's lot was occasioned. These purchases seem to have been made by defendant voluntarily. The Arnett lot, for which defendant paid $5,500, joined plaintiff's lot, and had a frontage of 43.5 feet on Merchant street with same depth of plaintiff's lot. The others were on the same street, some immediately across, and all in the very near vicinity. The prices paid for them were pertinent to show the market value of plaintiff's lot, being similarly situated. One of the points at issue was the market value of plaintiff's lot immediately before the change of the grade, and the value of the other lots would certainly have probative force in determining that point of the issue. The point raised by this assignment is thoroughly discussed and decided in *Railroad Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, with citation to numerous authorities, and it would serve no useful purpose to elaborate upon the discussion there found. In *Virginia Power Co.* v. *Brotherton,* 90 W. Va. 155, we said in the 2nd point of the syllabus: "Evidence of the sales of other lands of similar character, though not in the imme-

diate vicinity of the land to be taken, may have some bearing on the question of the value of the land to be taken, and may when given in evidence be considered by the jury in estimating the value of such land.'' It was not error to introduce these deeds, and hence plaintiff's instruction No. 6, which instructed the jury that they might take into consideration the prices paid by defendant for other lots in the neighborhood and similarly situated in ascertaining the value of plaintiff's lot at the time it was alleged to have been damaged, was proper.

Defendant's fifth assignment of error is that plaintiff's instruction No. 5 should not have been given, because of want of evidence to support it.   That instruction told the jury that defendant was not entitled to set off against the damages claimed for change in grade any sum which defendant expended in building the sidewalk on Morgantown avenue or Merchant street, if the jury believed the same was done at the expense of defendant, and that defendant agreed to accept therefor the dirt on said lot; and that the jury should not allow anything as a set-off for removing the dirt if they found that defendant agreed to remove the same and built the sidewalk in consideration of getting the benefit of the dirt to make its fill in its right of way.   It appears that after the grading had been done defendant desired to take the dirt from plaintiff's lot and made a written proposal therefor, to which defendant agreed, making some additional requirements.   Defendant removed the dirt, but did not perform all the requirements of plaintiff in consideration therefor.   It laid the cement sidewalk and removed the greater part of the dirt from plaintiff's lot.   We do not find any evidence of a formal acceptance of the requiremnts of plaintiff as a condition to the removal of the dirt, but the facts and circumstances surrounding the carrying out of the proposal would warant the conclusion of an implied acceptance, and justify the instruction.

Defendant's sixth assignment of error relates to the giving of plaintiff's instruction No. 7.   That instruction is as follows:   ''The Court instructs the jury that in arriving at

their verdict in this case they shall take into consideration their view of plaintiff's premises, the condition and situation thereof before and after the changes made by the defendant, as well as the opinion evidence of witnesses, together with all the other evidence in the case; and if after considering all the evidence and circumstances proven in the case, the jury believe that plaintiff's property was injured and that the market value thereof was diminished, then the jury should allow the plaintiff as damages, the amount of the difference in the market value of said property immediately before and immediately after said changes were made supposing that the same were made at a single instant of time.'' It is said that this instruction is bad because, in directing the jury to consider the condition and situation of the lot before and after the changes were made, it neglected to limit their consideration thereof to the condition and situation immediately before and immediately after the changes complained of; notwithstanding the fact that the latter part of the instruction when speaking of the market value, used those terms; therefore, it is insisted that the instruction is confusing and misleading, and is prejudicial error. We fail to see wherein this instruction could confuse or mislead any sensible jury. The jury should take into consideration their view of the premises and its condition before and after the improvement, together with all the other evidence before them, and then measure the damages by the difference between the value of the property immediately before and its value immediately after the change of grade was made. This, the instruction fully covers. The objection is extremely technical and hypercritical. There were instructions given, offered by both parties, telling the jury that any special or peculiar benefits to the lot by reason of the change in grade should be taken from the damages found.

The last assignment of error is that the damages found by the jury are excessive and against the clear preponderance of the evidence. It is argued that the opinion evidence of eighteen witnesses in favor of the defendant as against the opinion of ten witnesses in favor of the plaintiff amounts

to a clear and decided preponderance in favor of the defendant and against the verdict and makes such a case as would justify this court in holding that the damages were excessive and that the verdict was induced by prejudice, passion, bias, partiality or mistake.   In support of this proposition the case of *N. & W. R. R. Co.* v. *Nighbert,* 46 W. Va. 202, and the recent case of *Fuccy* v. *Coal & Coke Co.,* 75 W. Va. 134, and other cases, are cited, all of which accentuate the well known proposition that when the evidence plainly, clearly and decidedly preponderates against the verdict of the jury the court should set it aside and grant a new trial.   Upon an examination of the testimony of some of the opinion witnesses for defendant it is apparent that their evidence was based somewhat upon consideration of the general enhancement of values because of the construction of the railroad in that part of the city.   The greater number of witnesses on either side is not controlling.   Opinion evidence is not always very reliable; it will be noted that there was a vast difference in the opinions of these witnesses, some of them fixing the damage to this lot at $5,000, and others fixing the benefit to it at the same amount.   It was within the peculiar province of the jury to weigh and consider this opinion evidence; and we have the judgment of the court confirming their finding. And when we take into consideration the documentary evidence of values paid for lots in the immediate neighborhood and similarly situated, at or within a short time of the damage done to plaintiff's lot, together with the fact that the jury inspected the premises, and the opinion evidence, we cannot say that the damages were excessive or that the verdict was superinduced by prejudice, passion, bias or partiality.   We said in the recent case of *Compton* v. *County Court,* 83 W. Va. 745; ''Where the testimony relative to the amount of damage caused to an abutting property owner by a change in the grade of a public road is conflicting, the verdict of a jury based on such evidence will be accorded great weight, often controlling weight, when challenged for error in this court.''

The judgment will be affirmed.                    *Affirmed.*