THE STATE ROAD COMMISSION OF WEST VIRGINIA,
*A Corporation, et al.*

*v.* (Parcel No. 1)

PENNDEL COMPANY, *A Delaware Corporation, et al.*

THE STATE ROAD COMMISSION OF WEST VIRGINIA,
*A Corporation, et al.*

*v.* (Parcel No. 2)

PENNDEL COMPANY, *A Delaware Corporation, et al.*

*a n d*

THE STATE ROAD COMMISSION OF WEST VIRGINIA,
*A Corporation, et al.*

*v.* (Parcel No. 3)

PENNDEL COMPANY, *A Delaware Corporation, et al.*

(No. 12164)

Submitted September 18, 1962.    Decided January 15, 1963.

*Goodwin, Mead & Goodwin,* for plaintiff in error.

*Anthony G. Halkias, Philip J. Sheets,* for defendants in error.

CAPLAN, JUDGE:

This is a proceeding in eminent domain instituted in behalf of the State of West Virginia by the state road commission (herein referred to as commission), against Penndel Company, a Delaware corporation (herein referred to as Penndel). The purpose of the proceeding is to acquire certain parcels of land as a right of way for the construction

of Interstate No. 70, a public road. Penndel owns all of the land involved. Dwelling houses had been erected, however, on two of the parcels under separate lease agreements with Penndel. These houses were owned outright by the tenants Thomas J. Triece and Paul M. Singer.

Because of the three parcels of land and the special interests of Triece and Singer, three separate condemnation proceedings were instituted by the commission. Subsequently, awards were made to Triece and Singer for the value of their respective houses, and the cases were consolidated for trial with Penndel as the remaining defendant.

The Wheeling Coal Railroad Company was incorporated in this State in 1916. The charter issued by the Secretary of State provided that the corporation proposed to build a railroad which would commence near the city of Wheeling, in Ohio County, proceed along or near Wheeling Creek, through the counties of Ohio and Marshall to the Pennsylvania state line, at a point near the town of Majorsville. Pursuant to its expressed purpose the railroad company purchased several parcels of land in Ohio and Marshall counties. According to the evidence contained in the record of this case, all of the property involved in this proceeding was acquired by Wheeling Coal Railroad Company in 1916 and 1917. In their respective briefs the parties hereto appear to agree that some property was purchased in 1933, although it is apparent, from the testimony of one of the witnesses for Penndel, that such later purchased property is not involved directly in this condemnation proceeding. From 1933 until the present time it is undisputed that no further properties were acquired by Wheeling Railroad nor by Penndel. While most of the alleged right of way in Marshall County has been acquired, such is not the case in Ohio County. It is clear, in the record, that in Ohio County several large gaps exist in Penndel's claimed right of way. Furthermore, the areas within the gaps consist of residential, commercial and industrial properties, the acquiring of which would be most costly.

In 1954 Penndel Company, a wholly owned subsidiary of the Pennsylvania Railroad Company, merged with the

Wheeling Coal Railroad Company and succeeded Wheeling Railroad as the owner of all of the properties it had acquired.

This controversy had its beginning in 1958, when the state road commission filed its petition to condemn, for right of way purposes, certain parcels of land then owned by Penndel. In its answer Penndel contended that such a taking constituted a severance of its railroad right of way. After the claims of Triece and Singer had been disposed of several pretrial conferences were held, with the commission and Penndel as the remaining parties. It is the position of Penndel that its alleged right of way, extending from the Ohio River at Wheeling across the northern panhandle of West Virginia into Pennsylvania, was rendered useless by its severance by Interstate No. 70, and that it is entitled to damages for such severance. Many exhibits were offered by Penndel which were designed to show that it had acquired virtually all of the proposed right of way in Ohio and Marshall counties, and that the property actually constituted a railroad right of way.

At the pre-trial conference the court considered the matter of residual damages and concluded that Penndel had no railroad right of way in fact, and therefore was not entitled to present evidence to establish residual damages. Upon the motion of counsel for Penndel, concurred in by counsel for the commission, a trial by jury was waived and the case was heard by the court in lieu of a jury. In the judgment order entered on July 1, 1961, the trial court awarded Penndel $49,631.00, as just compensation for the land taken by the State. The effect of that order, together with the pre-trial conference order, is that Penndel is not a railroad, has no right of way for railroad purposes, and that it is not entitled to residual damages. Defendant's motion for a rehearing was denied and Penndel sought this writ of error.

In its petition for a writ of error Penndel relies upon seven separate assignments of error to the judgment of the trial court. A thorough consideration of such assignments presents the following questions: (1) Did the trial court err

in its refusal to require the commission to resort to an equity suit to fix the location and manner of crossing Penndel's claimed right of way before it instituted this proceeding in eminent domain? (2) Was it error to hold that Penndel Company was not and is not a railroad? (3) Did the refusal by the trial court to allow damages to Penndel for alleged damage to its residuary property constitute error?

The principal and controlling issue in this case is embodied in question number two above. Basically, is Penndel a railroad? If this question is answered in the affirmative, then clearly Penndel is entitled to residual damages by reason of the severance of its right of way. A negative answer thereto, however, compels the conclusion that there was no right of way, thus no severance and no damage to the remaining property of Penndel. Contrary to the position of Penndel, the commission contends that the defendant is not a railroad and that compensation for the property taken for public use should be determined solely on the basis of the fair market value of such property. Consequently, the commission further contends that the defendant is not entitled to any residual damages.

A railroad is defined in Webster's New International Dictionary, Second Edition, as: "A runway or track formed of rails * * *, laid end to end in two parallel lines to make a permanent way for cars; * * *." It is similarly defined in Black's Law Dictionary. See also 74 C.J.S., Railroads, Section 1, page 311, and 44 Am. Jur., Railroads, Section 3, page 215. It is evident, from the definition herein set out, and those referred to, that the term "railroad" connotes something more than bare land upon which rails, at some future indefinite date, may be laid. It means that rails must be in place, for the transportation of passengers or freight, to satisfy the term "railroad".

In this case the property involved was acquired in 1916 and 1917. No further acquisition has been made since 1933. Although maps were filed in the office of the Secretary of State some forty-five years ago, purporting to show a railroad right of way, nothing whatever has been done to indicate any further intention to construct a railroad. No

tracks have been laid, nor is any related equipment in existence. It is undisputed in the record that large gaps of land exist in the proposed right of way of Penndel. These gaps consist of residential, commercial and industrial properties which, in all probability, could be acquired only through condemnation. The cost of such acquisition would be financially prohibitive. While this is not conclusive in an eminent domain proceeding, evidence in this case of the high cost of future acquisition does tend to abrogate defendant's contention that it still intends to construct a railroad in this area. Even though Penndel, or its predecessor in title, at one time may have intended to construct a railroad, the considerations heretofore discussed clearly show that such project has been abandoned, or at least postponed beyond the foreseeable future.

As a further element of residual damages, Penndel claims that by reason of the commission's action it will be required to by-pass the land so taken by the State and thereby will be subjected to an additional expenditure of $1,030,000.00. This contention has no merit. In a proceeding in eminent domain only when the State or other entity is compelled to construct a substitute road or way will the cost of such substitute facility be considered as a proper measure of damages. *State of Washington* v. *United States*, 214 F. 2d 33; *City of Fort Worth* v. *United States*, 188 F. 2d 217; *United States* v. *Arkansas*, 164 F. 2d 943. Although these cited cases concern the taking by the federal government of state or city roads or streets, it follows that the general proposition stated therein applies equally to the factual circumstances in the instant case.

Consider the situation in which we find Penndel. For more than forty-five years Penndel and its predecessor in title have owned this property. The proposed right of way is far from complete. For all of these years the alleged plans for the establishment of a railroad have been dormant. Nothing has been done to show that Penndel is anything other than a land-holding company for the Pennsylvania Railroad Company. Penndel is under no duty to construct a railroad and could in no manner be compelled to under-

take such construction. It becomes obvious, therefore, that should compensation be paid on the basis of the cost of the alleged by-pass, such payment would be grounded solely on speculation. We are in accord with the great weight of authority which has repeatedly refused to allow purely speculative purposes to be considered as a proper measure of damages in condemnation proceedings. Furthermore, it is obvious that had the state road commission taken, for right of way purposes, one of the intervening properties not owned by Penndel, that company could not complain that its proposed right of way had been severed.

In furtherance of its claim for residual damages, Penndel cites several cases in support of the proposition that the owner of property is not limted to the use actually being made of the land taken but is entitled to consideration of its value for any purpose for which it is then reasonably available. It reasons, therefore, that since this property was acquired for right of way purposes, its value as such must be considered as a proper measure of damages.

While we concur in the general proposition of law stated in the foregoing paragraph, we are of the opinion that its application to the instant case is not warranted. There must be reasonable evidence that the purported use of the residue of the property is available in the immediate future. Speculation as to what use may be made of property at some future indefinite date is insufficient. A cogent statement of the principle involved was recently made by this Court in *Strouds Creek and Muddlety Railroad Company* v. *Herold,* 131 W. Va. 45, 45 S. E. 2d 513, as follows: "The inquiry as to value should be limted to the land as it exists at the time of the taking with due regard to the uses to which it is then applied or for which it may be suitable for any useful purposes reasonably to be expected immediately to occur. Values based on future or prospective uses to which the land may be applied and which are expected to bring or to produce estimated compensation or income, which are predicated on speculation or conjecture, are not to be considered." See also *Guyandot Valley Railway Co.* v. *Buskirk,* 57 W. Va. 417, 50 S. E. 521; *Railway Company* v. *Davis,* 58

W. Va. 620, 52 S. E. 724; *B. & O. Railroad Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868; *The Chesapeake and Ohio Railway Company* v. *Johnson,* 137 W. Va. 19, 69 S. E. 2d 393; *State ex rel. Wells* v. *City of Dunbar,* 142 W. Va. 332, 95 S. E. 2d 457; *United States* v. *Powelson,* 138 F. 2d 343. Possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings as to have no perceptible effect upon present market value must be excluded from consideration. 4 Nichols, Eminent Domain, 12.314.

Penndel insists that it contemplates the construction of a railroad over its alleged right of way in the counties of Ohio and Marshall. Yet, in excess of forty five years has passed since its original plans were made, and not a rail been laid. The necessary right of way has not been acquired, nor is there any evidence that a railroad will be constructed in the foreseeable future. In fact, the undisputed showing that no acquisition of property has been made in the past thirty years is strong evidence that the proposed project has been abandoned. Rights to a proposed road will continue "as long as such locating company manifests good faith by the diligent prosecution of the work contemplated by its organization." *Chesapeake & Ohio Ry. Co.* v. *Deepwater Ry. Co., et al.,* 57 W. Va. 641, 50 S. E. 890. See also *People* v. *Ocean Shore Railroad, Inc.,* 32 Cal. 2d 406, 196 P. 2d 570, 6 A.L.R. 2d 1179. Certainly this defendant can not be said to have prosecuted its work with reasonable diligence.

In summary, no railroad is in existence or under construction, nor has Penndel, in any manner, evidenced any plans for the construction thereof in the foreseeable future. We believe it clear, and therefore hold, that Penndel Company is not a railroad and that consequently it could have no right of way susceptible to severance by the State in this proceeding.

The defendant's contention that the commission, as a condition precedent to this proceeding, must resort to equity as provided in Code, 54-1-9, is without merit. This statute, insofar as railroads are concerned, applies only to operating

railroads and, in view of our holding herein, can have no application in this case.

The judgment of the Circuit Court of Ohio County is affirmed.

*Affirmed.*