THE STATE ROAD COMMISSION OF WEST
VIRGINIA, *A Corporation, et al.*

*v.*

REUBEN FERGUSON, *et al.*

(No. 12298)

Submitted May 26, 1964.          Decided July 7, 1964.

*Anthony G. Halkias,* for plaintiffs in error.

*Greene, Morgan & Ketchum, Edward H. Greene, Claude M. Morgan, Chad W. Ketchum,* for defendants in error.

744

CAPLAN, JUDGE:

This is a proceeding in eminent domain, instituted in the Circuit Court of Wayne County by The State Road Commission of West Virginia, a Corporation, and Burl A. Sawyers, State Road Commissioner, petitioners, against Reuben Ferguson and Rosie Marie Ferguson, his wife, defendants, wherein the petitioners seek to condemn for highway purposes 10.22 acres of a tract of land owned by the defendants. This land is situate in Ceredo District, near the City of Ceredo, Wayne County.

The parties having been unable to agree as to the amount of compensation to be paid for the land actually taken and for the damage to the residue, this proceeding was instituted. Upon the trial of this case, the jury returned a verdict of $45,000.00, as just compensation to Reuben Ferguson and Rosie Marie Ferguson for the land taken and for the damage to the residue. The petitioners filed a motion to set aside the verdict of the jury and for the award of a new trial. This motion was overruled and a writ of error was sought in and awarded by this Court.

The testimony of the property owners reveals that they acquired this property in 1950 and approximately two years later constructed a house thereon. The defendants lived there for three years, when their house was destroyed by fire. Sometime thereafter they moved to Florida where they have resided for the past five years, and where Reuben Ferguson has been employed as a construction worker.

Rosie Marie Ferguson, one of the defendants, testified as to the desirability of this property as a subdivision. She related that although their property was located on top of a hill, a rock base road made it accessible during both winter and summer months. Also, she noted that when they lived there all utilities were available to them. She stated that she and her husband had, for a long period of time, planned to develop this land as a subdivision and to construct twenty-five to thirty houses therein. In furtherance of this purpose she and her husband said that they were systematically saving money. Their testimony reveals, how-

ever, that nothing had been done to consummate this plan except they had employed an engineer to make a plat setting out the proposed lots. It was readily admitted on cross-examination that this plat was not made until sometime after it had become known that the road commission intended to acquire the property. This is made more evident by the fact that the defendants' plat was made from the road commission's map of the property.

Several witnesses appeared on behalf of the defendants during the trial in relation to the valuation of the subject property. One witness, Noah Chafin, a carpenter by trade, testified that in his opinion the fair market value of the property taken was $68,000.00. He arrived at that figure by considering the defendants' land as a subdivision of lots and by placing a valuation of $2,500.00 upon each lot. The petitioners did not object to this testimony on direct examination. On cross-examination, however, this witness was interrogated as to the dimensions of the lots and as to whether these lots had actually been laid out on the ground or had been offered for sale. When the witness indicated that he had only seen a map and did not know whether the lots had actually been offered for sale, the petitioners made a motion to strike his testimony. This motion was overruled.

Victor Lewis Pratt, testifying on behalf of the defendants, stated that the fair market value of the property was $65,000.00. He arrived at that figure in the same manner as did the witness Chafin, that is, on the basis of the value of individual lots in a subdivision. Again, counsel for the petitioners did not voice any objection during direct examination. On cross-examination the witness' answers made it clear that nothing had been done on the land to indicate that lots had been laid out or offered for sale, and that this was not an existing subdivision. At this point, counsel for the petitioners moved to strike this testimony, which motion was overruled.

The witness Pearl Booth, an insurance man and a former assessor of Wayne County, testified that the property was favorably adapted for cemetery purposes. Based on the

number of cemetery lots which the property could contain, he placed a valuation of $345,300.00 thereon. This witness also testified that the next best and most profitable use of the property would be that of a subdivision. Placing a valuation of $2,500.00 per lot, he indicated that a fair market value for this property, after deducting certain expenses for roads and other necessary improvements, was $52,500.00. No objection was made to this testimony.

Frank Canterbury, Clerk of the County Court of Wayne County, appeared in this proceeding on behalf of the defendants. Referring to a deed book from his office, he testified that a lot in Oakview Heights, an existing subdivision located near the defendants' property, sold for $3,000.00. Counsel for the petitioners objected to this testimony on the ground that the piece of property about which this witness was testifying is a lot in an existing subdivision. This objection was overruled by the court and the testimony was allowed to go to the jury.

Willard Varnum, a real estate broker and a qualified appraiser, appeared on behalf of the petitioners in this proceeding. He testified that he went upon the property for the purpose of making his appraisal. He further said that he compared this property with the recent sales of comparable property in the area. Basing his valuation on the acreage of this property as a unit, he testified that the fair market value therefor was $5,825.00. He stated that "the highest and best use was a potential subdivision." He further related, however, that this was not an existing subdivision.

The petitioners assign as error the trial court's action in (1) overruling their motion to strike the testimony of Chafin and Pratt; (2) allowing, over their objections, the testimony of Canterbury to go to the jury; (3) permitting the defendants to introduce evidence relating to the value of the subject land based on its value as cemetery lots, when in fact the land was not a cemetery; and (4) overruling petitioners' motion to set aside the verdict of the jury and award a new trial.

Inasmuch as no objection was made, during direct examination, to the testimony of witness Chafin, objection to such evidence will not be considered here. Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal. *Blain* v. *Woods,* 145 W. Va. 297, 115 S. E. 2d 88; *The Chesapeake and Ohio Railway Company* v. *Johnson, et al.,* 137 W. Va. 19, 69 S. E. 2d 393; *Baker* v. *Gaskins, et al.,* 124 W. Va. 69, 19 S. E. 2d 92; *Harmon* v. *Spurlock,* 121 W. Va. 633, 5 S. E. 2d 797; 1 M. J., Appeal and Error, Section 103. Nor were the objections saved by the motion to strike. This motion was made after a brief cross-examination and failed to point out specifically the testimony that was objectionable. As stated in 7 M. J., Evidence, Section 298, "* * * a party who asks to have evidence excluded, which has been admitted without objection, must recall and point out distinctly the objectionable answers or statements, or the court may properly overrule the motion to exclude." See *Vale* v. *Suiter & Dunbar,* 58 W. Va. 353, 52 S. E. 313.

The petitioners failed to object to the introduction of evidence relating to the fair market value of the subject property based on the aggregate value of cemetery lots. For the reasons stated above, this objection will not be considered on this appeal.

We come now to the testimony of Victor Lewis Pratt, who appeared on behalf of the defendants. Although no objection was made thereto on direct examination, the matters raised on cross-examination and the subsequent motion to strike that testimony distinctly pointed out what the petitioners considered to be objectionable. The motion to strike in this instance, unlike that made after witness Chafin's testimony, clearly showed an objection to specific evidence, that is, the consideration of this property as a subdivision, when in fact it was not.

The question now presented is whether the testimony of Pratt was proper and should have been admitted for consideration by the jury. As noted above, this witness testified as to the fair market value of the property involved on the

748

basis of the total value of individual lots in a subdivision. He readily admitted, however, that nothing had been done on the land to convert this tract into a subdivision and that it was not, in fact, an existing subdivision.

In a condemnation proceeding compensation for land should be ascertained and determined on the basis of its value at the time it is taken. *Strouds Creek and Muddlety Railroad Company* v. *Herold, et al.,* 131 W. Va. 45, 45 S. E. 2d 513; *Baltimore and Ohio Railroad Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868; *Buckhannon & Northern Railroad Co.* v. *Great Scott Coal & Coke Co., et al.,* 75 W. Va. 423, 83 S. E. 1031. At the time of the taking in this case the defendants' land was a single tract of approximately eleven acres.

It is well settled that if land is so situated that it is available for and adaptable to building purposes, its value for such use may be considered. It is equally well settled, however, that the measure of compensation is not the aggregate of the prices of the lots into which the tract could best be divided. See 4 Nichols on Eminent Domain, 3d Ed., Section 12.3142[1] pp. 176, 177 and cases cited in n. 3 thereto. That this is the rule in this jurisdiction is evident from the following language: "So long as the unity of a tract is maintained, the jury in such proceeding may take into consideration its adaptation to lot purposes; but it is the tract as a whole and not the lots into which it might be divided, that should be valued." Point 3, Syllabus, *Monongahela West Penn Public Service Company* v. *Monongahela Development Company,* 101 W. Va. 165, 132 S. E. 380.

Evidence of the value of a tract of land based upon the total price of proposed lots into which the tract may be divided has been held improper and inadmissible in other jurisdictions. We quote with approval the following language of the Court in *Pennsylvania S. V. R. Co.* v. *Cleary,* 125 Pa. St. 442, 17 A. 468: "Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately. It is proper to inquire what the tract is worth, having in view the purposes for which it is best

adapted; but it is the tract, and not the lots into which it might be divided, that is to be valued. * * * The jury are to value the tract of land, and that only. They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. * * * They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in. This is a rule that is well settled, and the court should have drawn the attention of the jury to it, so as to have left no room for uncertainty on their part." Similar expressions are found in the following cases: *Barnes* v. *North Carolina State Highway Comm.,* 250 N. C. 378, 109 S. E. 2d 219; *Coral-Glade* v. *Board of Public Instruction,* 122 So. 2d 587; *Etowah County* v. *Clubview Heights Co.,* 267 Ala. 355, 102 So. 2d 9; *Tigar* v. *Mystic River Bridge Authority,* 329 Mass. 514, 109 N. E. 2d 148; *Forest Preserve Dist.* v. *Eckhoff,* 372 Ill. 391, 24 N. E. 2d 52; *Los Angeles* v. *Hughes,* 202 Cal. 731, 262 P. 737.

Witness Pratt's testimony that the land of the defendants was best suited for "building sites" was proper. However, he further testified as follows: "Q. What in your opinion is the fair market value of the property owned by the Fergusons and taken by the State of West Virginia? A. I would say $65,000.00. Q. How did you arrive at that? A. I figured it out on the lots. I would say starting at $1800.00 and some would go as high as, I would say, $4000.00. Q. What would be the average? A. The average I figure was around $2500.00 per lot."

Inasmuch as it was readily admitted on cross-examination, and the entire record so shows, that the subject tract of land is not an existing subdivision, the above quoted testimony was speculative and conjectural and should not have been admitted for jury consideration. In so testifying this witness failed to consider certain pertinent factors involved in converting a tract of land into a subdivision. He ignored the expense of cleaning off and improving the land; of laying out streets; of providing utilities; of dividing it into lots; of advertising and selling the lots; and the general speculation

involved in such an undertaking. This Court held, in Point 3 of the Syllabus of *State Road Commission* v. *Penndel Company,* 147 W. Va. 505, 129 S. E. 2d 133: "Values based on future or prospective uses to which the land may be applied, which are predicated on speculation or conjecture, are not to be considered."

The testimony of witness Pratt, as related above, being improper, we are of the opinion that the motion to strike should have been sustained.

A further assignment of error which warrants consideration here is that concerning the testimony of defendants' witness, Frank Canterbury. He testified that a lot in a nearby existing subdivision was conveyed by Grace Rife and others to S. E. Bingham and Betty L. Bingham, the consideration paid therefor having been $3,000.00. The petitioners objected to the introduction of this evidence on the ground that the lot about which the witness testified was in an existing subdivision. The court overruled this objection.

The authorities generally agree that in most jurisdictions evidence of the price paid for similar property is admissible in determining the value of property taken in a condemnation proceeding. 18 Am. Jur., Eminent Domain, Section 351; 4 Nichols on Eminent Domain, 3d Ed., Section 12.311[3]. This proposition has been sanctioned by this Court. *Crowl* v. *Buckhannon and Northern Railroad Co.,* 92 W. Va. 188, 114 S. E. 521; *The Virginian Power Co.* v. *Brotherton, et al.,* 90 W. Va. 155, 110 S. E. 546; *Baltimore & Ohio Railroad Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868.

In the *Crowl* case, *supra,* the plaintiff's property, consisting of an urban lot, was damaged by the railroad company. In an effort to arrive at the value of his property, the plaintiff introduced evidence showing the prices the railroad company had paid for lots similarly situated. These lots were on the same street, were of the same size and character and one actually adjoined the plaintiff's lot. This Court held that such evidence was proper since the lots were similarly situated and were like in character to that of the plaintiff. In each of the other cases cited above the

properties compared, as to selling price, were similar in character.

Though, in the above three cases, evidence of the price paid for other property was held to be admissible in determining the value of the property involved, the unmistakable reason for such holding was that the properties compared were similar in size, character, time of sale and location. In the instant case, Mr. Canterbury testified about a lot which was sold from an existing subdivision. The property involved in this proceeding is a tract of land of approximately eleven acres. There is no similarity whatever between the two. If this evidence were allowed the jury would be required to investigate collateral issues, such as the many items of cost which necessarily would be incurred to convert the subject property into lots. This could lead only to confusion and cause the jury to engage in speculation and conjecture.

It has been held that evidence of the sale price of improved property may not be admitted to prove the value of unimproved property. In *Forest Preserve Dist. of Cook County* v. *Alton R. Co., et al.,* 391 Ill. 230, 62 N. E. 2d 701, the Court said that although evidence of voluntary sales of other lands in the vicinity, which are similarly situated, is admissible to aid the jury in fixing the value of the tract to be condemned, such evidence is improper and should not be admitted when there is a want of sufficient similarity. The Court, in *City of Austin* v. *Cannizzo,* 153 Tex. 324, 267 S. W. 2d 808, said that in determining the market value of unimproved property, prices paid for improved lots and the value assigned to improved lots in recent sales is inadmissible in that it does not meet the test of similarity. See also *City of Houston* v. *Fisher* (Tex. Civ. App.), 322 S. W. 2d 297.

Pertinent to the instant proceeding, many courts have held that evidence of the value of platted or subdivided land is not admissible to prove the value of acre or unplatted property. Holding such evidence inadmissible, the Court, in *City of Chicago* v. *Pridmore, et al.,* 12 Ill. 2d 447, 147 N. E. 2d 54, commented as follows: "This court has consistently held that property which has been subdivided into lots is

not similar to or similarly conditioned as unsubdivided or acre property." See Annotation, 85 A.L.R. 2d 110, at p. 139, et seq., and cases cited therein.

For the reasons stated, we are of the opinion that the admission of the testimony of witnesses Pratt and Canterbury, over the objections of the petitioners, constitutes reversible error. The judgment is reversed, the verdict is set aside and the case is remanded to the circuit court for a new trial.

*Reversed; verdict set aside; new trial awarded.*