W. Va. Dept. Of Highways, *a corp., et al.*

*v.*

Warren H. Sickles, Sr., *et al.*

(No. 13761)

Decided April 4, 1978.

*Wilson, Frame, Rowe & Jolliffe, Richard E. Rowe*, for plaintiffs in error.

*Frank Curia, Legal Div., DOH*, for defendants in error.

Neely, Justice:

Warren and Birdie Sickles owned a 29-acre farm in Monongalia County. About 1952 they had built a residence, barn, and other outbuildings on this property

where they raised cattle and thoroughbred Togganburg goats. The residence was a one and one-half story house with four rooms, a bath, and basement. Most of the land was cleared, part of it was wooded, and like most West Virginia land, it was divided between hillside and flat land. The property fronted for a distance of 1700 feet on Aarons Creek Road, approximately two miles from the City of Morgantown.

In April 1971, the State took 12.48 acres of the Sickles property for the construction of a modern, four-lane highway connecting Interstate 79 with Cumberland, Maryland. This take included all improvements and all frontage on the Aarons Creek Road and left a remainder of approximately 17 landlocked acres. The State's appraiser testified to a market value for the entire property with improvements immediately before the taking of $14,800.00, of which $2,500.00 was attributable to the remaining 17 landlocked acres, the value of which was diminished by $1,250.00 as a result of the taking. Consequently the State's expert testified that the total fair market value of the property taken, plus the damage to residue, amounted to $13,550.00.

The appellant landowner, Mrs. Sickles, placed a valuation on the property taken plus the damage to the residue of $44,000.00. She based her opinion upon a value of $1,000.00 per acre for 29 acres and $15,000.00 for the house and other improvements. During the trial she attempted to testify that her estimate of the property's fair market value was based in part on her personal knowledge of certain comparable real estate sales in the vicinity of the property taken; however, the court refused to permit her to testify concerning these other sales. Furthermore, the trial court also refused to permit counsel for the landowners to cross-examine the State's expert on these allegedly comparable sales. Counsel for the landowners did vouch the record on the six comparable sales to which Mrs. Sickles would have testified and which counsel then attempted to use in cross-examination.

At the conclusion of the trial, the jury awarded the landowners $18,000.00 for all damages. The landowners now appeal on the grounds that Mrs. Sickles should have been permitted to testify with regard to the foundation of her opinion on the value of her land, namely the price paid for comparable pieces of real estate in the general vicinity.

## I

There are three fundamental techniques which are used in the appraisal of real estate, and in the appraisal of complex property consisting of different qualities of land and numerous improvements, all three can be used simultaneously as cross-checks upon one another. All three of these techniques in the hands of an expert appraiser are designed to provide some estimation of what a willing buyer, desirous of buying but under no compulsion to buy would pay to a willing seller, desirous of selling but under no compulsion to sell. The first of these approaches is known as the market approach and involves, essentially, an evaluation of similar pieces of property in the general area and the prices paid for each. The second approach is the cost approach and is used primarily where there are recently constructed improvements whose cost of construction or cost of replacement is readily ascertainable. The third is the income approach, and this is used where the property has a rental value which can be capitalized to give some fair indication of what an investor would pay for the privilege of receiving that income over some foreseeable period of time. Obviously the most suitable method of appraisal for the appellants' property was the market approach.

Our law has long recognized the admissibility of a landowner's opinion concerning the value of his land. *Clay County Court v. Adams*, 109 W. Va. 421, 155 S.E. 174 (1930). *See also Tennessee Gas Transmission Co. v. Fox*, 134 W. Va. 106, 58 S.E.2d 584 (1950), which supports the foregoing proposition and adds the following pertinent gloss at 112, 58 S.E.2d at 589: "The rule which recog-

nizes the admissibility of evidence of the value of the land given by a person who knows the property and its value is liberally applied when farm land is involved. ...." While the thought may have crossed our minds that all landowners will testify to grossly inflated values and all condemnors' experts will testify to grossly deflated values, leaving justice to be done by the jury after a view,[1] the law contemplates slightly more integrity on the part of witnesses and slightly more science in the allocation of awards than that theory allows. If, therefore, the landowner is permitted to testify concerning a fairly complex subject, namely the value of his own property, then it follows ineluctably that the methodology by which he arrives at his opinion is indispensable to assigning proper weight to his opinion. We should think that authorization for a landowner to testify is not merely the granting of permission to the litigants to act out.

In the case before us there were six allegedly comparable transactions which the landowners sought to introduce into evidence. Of the six allegedly comparable parcels, the record demonstrates that at least one of them involved not only payment by the West Virginia Department of Highways for land actually taken but also damages for injury to residue. Our law indicates that sales involving damage to residue are not "comparable" and, therefore, not admissible into evidence to establish a per acre land value. *United Fuel Gas Co. v. Allen*, 137 W. Va. 897, 75 S.E.2d 88 (1953); *Chesapeake & Ohio Railroad Co. v. Johnson*, 134 W. Va. 619, 60 S.E.2d 203 (1950); syl. pt. 6, *Baltimore & Ohio Railroad Co. v. Bonafield's Heirs*, 79 W. Va. 287, 90 S.E. 868 (1916).

The Department of Highways argues that the other five parcels of land were not comparable because they involved less than an acre, or the sales were too distant

---

[1] We note that in West Virginia eminent domain proceedings, "peculiar weight is given to the verdict where a view has been had." *Clay County Court v. Adams*, 109 W. Va. 421 at 426, 155 S.E. 174 at 176 (1930). *See also Guyandot Valley R'y Co. v. Buskirk*, 57 W. Va. 417, 50 S.E. 521 (1905).

in time, or the land contained improvements which were not comparable, or the topography was markedly dissimilar. While the trial court would undoubtedly be permitted to exclude utterly irrelevant evidence offered under the guise of comparable sales, we hold that where the sales sought to be introduced are in the same general vicinity, are similar in character to the land involved, and are not so distant in time, in light of the nature of the economy in the area where the land is located, as to be irrelevant, questions such as size, topography, value of improvements, and proximity of the sale to the date of the taking all go to the weight of the evidence rather than its admissibility. *See State Road Commission v. Ferguson*, 148 W. Va. 742, 137 S.E.2d 206 (1964); *Tennessee Gas Transmission Co. v. Fox*, 134 W. Va. 106, 58 S.E.2d 584 (1950); *Crowl v. Buckhannon & N. R. Co.*, 92 W. Va. 188, 114 S.E. 521 (1922); *Virginian Power Co. v. Brotherton*, 90 W. Va. 155, 110 S.E. 546 (1922). The condemning authority may, of course, retain its own experts, and those experts may place before the jury evidence to refute the landowners' testimony. Our Court has heretofore been very liberal with regard to the qualifications necessary for an expert witness to testify on the value of property in condemnation proceedings, *State Road Commission v. Darrah*, 151 W. Va. 509, 153 S.E.2d 408 (1967), and we have previously held in *State Road Commission v. Ferguson*, 148 W. Va. 742, 137 S.E.2d 206 (1964) that evidence of the price paid for similar property is admissible in determining the value of property taken in a condemnation proceeding. Taking these two principles together, we conclude that the trial court erred in this case in refusing to permit the appellant landowner to testify about sales which she had reason to believe were comparable.

## II

The appellants further argue that the trial court erred in forbidding their counsel to cross-examine the State's expert concerning the sales which the appellants had originally sought to introduce into evidence through Mrs. Sickles' testimony. With the exception of the tract

of land previously discussed, for which the purchase price included damages for injury to residue, we find that the trial court erred in circumscribing counsel's cross-examination of the condemnors' expert witness. While some cross-examination was permitted in the record, the court consistently sustained objections to extensive examination when the expert said that he had not considered one of the subject pieces of property either because he did not think that it was comparable or because the sale occurred after he had made his appraisal. Where an appraiser has not considered a sale the court should permit the landowners' counsel to set forth the facts of the sale and inquire of the expert whether knowledge of such a sale would have changed his appraisal, and if not, why not. Where the facts used in such cross-examination are in question, and upon proper motion, the trial court in the exercise of his discretion may require counsel to prove them first, but in this case there already was an offer of proof which had been rejected. See *Clay County Court v. Adams,* 109 W. Va. 421, 155 S.E. 174 (1930). In the cross-examination of an expert witness wide latitude should be given to opposing counsel to investigate the methodology by which the expert has arrived at his conclusion, and where there are facts known to counsel which are obviously inconsistent with a conclusion reached by an expert they should be brought to the expert's attention in order to test his conclusions.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Monongalia County is reversed and the case is remanded for a new trial.

*Reversed and remanded*
*for a new trial.*